Mason K. Knuckles and Bernice A. Knuckles v. Commissioner.
Knuckles v. Commissioner
Docket No. 4139-62.
United States Tax Court
T.C. Memo 1964-33; 1964 Tax Ct. Memo LEXIS 303; 23 T.C.M. (CCH) 182; T.C.M. (RIA) 64033; February 12, 1964
Joseph L. Arnold, for the petitioners. S. Clay Freed, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in the income tax of petitioners for the calendar year 1959 in the amount of $9,081. The sole issue to be decided is whether amounts paid petitioner Mason K. Knuckles (hereinafter referred to as petitioner) in settlement of his claims against his former employer were received by him as compensation for injury to his health and his personal reputation or as compensation due him under the terms of a written employment contract. Findings of Fact For the calendar year 1959, Mason K. Knuckles and Bernice *304 A. Knuckles filed a joint Federal income tax return with the district director of internal revenue for the district of Colorado. During the year 1959 and at all times material hereto, they were husband and wife residing in Denver, Colorado. They used the cash receipts and disbursements method of accounting in computing their taxable income for the year 1959. Petitioner, commencing November 1, 1956, was employed as Executive Vice President of Perpetual Life Insurance Company. In his capacity as executive vice president, petitioner was charged with the responsibility of overall development and management of Perpetual. On December 1, 1958, petitioner's employment with Perpetual was terminated by resolution of its board of directors on the stated grounds of petitioner's incompetency to manage the affairs of the company. At the board's meeting petitioner denied the incompetency, refused to resign, and insisted upon the company's compliance with its employment contract. Perpetual was organized under the laws of Colorado in 1956. Petitioner was its first executive vice president, having been employed in that capacity because of his reputation in the insurance field. He was an excellent *305 salesman, but had no previous experience in the management of a life insurance company. At the date of termination of petitioner's employment the board of directors of Perpetual believed that he had so mismanaged the company's affairs that its continued existence was imperiled. Certain of its directors adopted a policy of attempting through threats to bring about petitioner's voluntary resignation. These threats, as above indicated, were unsuccessful and the board's action to terminate petitioner's employment resulted. Petitioner engaged counsel for the purpose of bringing suit upon his employment contract against Perpetual. Suit was commenced in the District Court for the City and County of Denver, Colorado, by the issuance of a summons on March 4, 1959. No complaint had theretofore been filed nor was one served upon Perpetual. The body of the summons however designated the nature of the action as follows: This is an action for judgment against Defendant: 1. In the amount of $73,282.00 for Defendant's breach of its March 25, 1957 employment contract with Plaintiff; 2. Requiring Defendant to maintain in force its $50,000 insurance policy on Plaintiff's life; 2. For interest, *306 costs, and such other and further relief as Plaintiff may be entitled. By agreement between counsel for petitioner and counsel for Perpetual the filing of a complaint was delayed pending proceedings in the nature of discovery under rules of the court. These proceedings consisted of the taking of the preliminary depositions of several members of Perpetual's board of directors. During this period negotiations were carried on between counsel for petitioner and Perpetual looking toward settlement of petitioner's claims. Not until May of 1959 was any other theory of recovery advanced by petitioner's counsel than that indicated upon the mentioned summons. At that time the dollar amount of settlement had for some time been agreed upon. On the last-mentioned date petitioner's counsel for the first time proposed that settlement be made upon the basis of a tort claim for personal injury allegedly suffered by petitioner. At this time petitioner's counsel gave as one reason for this change in theory of recovery the tax advantage which would result to petitioner. Perpetual has refused throughout the settlement negotiations to acknowledge any tort liability to petitioner. In the settlement agreement *307 it has in fact denied tort or other liability. Petitioner's primary purpose in instituting suit against Perpetual was to collect amounts due him under his employment contract. He became increasingly concerned with his inability to obtain employment in the insurance field and with the fact that he no longer enjoyed his former good general reputation in his community. He became emotionally "upset" and "unstable." He instructed his attorneys that he refused to make any settlement except upon such basis that he would be vindicated "in the eyes of the public and the insurance world." He felt that his health had been impaired because of the action of Perpetual and the members of its board who had made depositions on discovery. He thereupon insisted that settlement be made only upon the basis of compensation for "personal injury." Due to what Perpetual's board of directors believed to be its extremely precarious position, the board felt settlement with petitioner had to be effectuated because the publicity incident to a trial of petitioner's claims would, in the board's opinion, endanger the continued existence of Perpetual. Perpetual's counsel was thereupon instructed to settle with *308 petitioner on the following basis as stated in the resolution of its board adopted May 20, 1959: RESOLVED, That the offer of Mr. Knuckles to settle all claims which Mr. Knuckles contends to have against Perpetual Life Insurance Co. be accepted on the basis as offered as follows: Cash on settlement
$20,000.00
Perpetual Life to pay, as due, the
8 remaining annual premiums
of $4,402.50 each year on Policy
No. 1 of the Company. (In case
such premiums are not due, due
to Mr. Knuckles' death during
said 8-year period, then in that
case the balance of such annual
premium yet due is payable, as
if due on said premium, to Mrs.
Knuckles)
35,220.00
$55,220.00 BE IT FURTHER RESOLVED, That the offer of such settlement include complete release of the Corporation, its Officers and Directors of any asserted liability to Knuckles; that Mr. John Tippit be authorized to draw the legal instrument to embody the offer of settlement, including the proper releases; and that a committee consisting of Ernest L. Perrine, Walter Koch, and Milo C. Morgan be empowered to act in behalf of the Board to agree on the wording embodied in the legal instrument drawn by Mr. Tippit. *309 Because of petitioner's insistence upon the basis for settlement being an action for personal injury and because Perpetual requested a clause in the agreement requiring that petitioner refrain from action detrimental to its well being which clause petitioner refused to accept, the settlement agreement was not executed until July 15, 1959. Subsequent to the resolution of Perpetual's board of directors last above mentioned, negotiations between counsel continued in an effort to arrive at a solution of the problem posed by petitioner's insistence upon the institution of a tort action for damages for claimed personal injury on one hand and Perpetual's denial of any liability on any ground. Petitioner's counsel proposed the issuance of a further summons and the filing of a complaint sounding in tort upon which Perpetual would confess judgment indicating at that time that by so doing petitioner would derive a tax benefit. Perpetual, through its counsel, refused to confess any liability upon any ground and further specifically refused to make any allocation of the agreed settlement amount solely for petitioner's tax advantage. It was thereafter agreed that petitioner might proceed to institute *310 whatever legal action he desired and that upon settlement such action would be dismissed with prejudice. The settlement agreement further provided that Perpetual's resolution terminating petitioner's services would be expunged from its records and would be replaced by a resolution merely indicating such termination but not the reasons therefor. Perpetual agreed to and did pay petitioner $20,000 in cash upon the execution of the settlement agreement. It also agreed to pay and has paid to date an annual premium of $4,402.50 from 1958 through 1965, inclusive, upon Perpetual's policy of insurance upon petitioner's life and, on or before July 17, 1959, assigned to petitioner all of its interest in such policy. The depositions above referred to were impounded by the court permanently. Ultimate Finding Amounts paid to or in behalf of petitioner in pursuance of his settlement agreement with Perpetual represented in part compensation due him under a contract of employment and in part damages due him for injury to his business reputation. Opinion This issue is one of fact. The respondent has determined that the amount of $25,635.61 paid to or in behalf of petitioner by Perpetual during *311 1959 in pursuance of its settlement agreement is ordinary taxable income. The amount is not here in dispute. Petitioner contends respondent's determination is erroneous because he alleges that any amounts paid under the settlement agreement were in compensation for damage to the health and personal reputation of petitioner resulting from the termination of his employment with Perpetual and the manner of such action. We find that petitioner has failed to sustain his burden of proof. It is not disputed that, were the settlement payments made as compensation for damage to petitioner's health and personal reputation, such amounts would not under section 104(a)(2) of the Internal Revenue Code of 1954 be taxable income to him. On the other hand, there is no dispute but that such amounts would be taxable income to petitioner should they represent compensation due him under his employment contract with Perpetual. Respondent has determined the latter to be the fact and the burden of proof to the contrary rests squarely upon petitioner. Rather than to directly prove the negative of respondent's determination petitioner has attempted, by affirmative proof, to establish *312 that Perpetual's payment to him was for damage to his health and personal reputation. He has not produced evidence from which we may do more than merely conjecture whether he has actually suffered the injury he complains of. The touchstone of his evidence is the form of action he had instituted and which was dismissed on settlement of his claim against Perpetual. We find this action to be of little help in our decision for it seems clear to us that its final theory of tort for personal injury was motivated, not by actual actionable personal injury to petitioner, but rather by the tax advantage resulting to him for settlement on that ground. Perpetual, the payor of the amount in controversy, cannot on this record be held to have made payment on any ground other than the fact that petitioner's claims, whatever form they took, must necessarily be liquidated in order that Perpetual's continued existence not be imperiled. While petitioner's first legal action based on contract remained in existence, he and Perpetual had arrived at an agreeable settlement figure. This figure remained virtually unchanged after the change of his form of action to tort for personal injury. This alone appears *313 sufficient to sustain respondent's determination. The fatal weakness in petitioner's case, however, is the total lack of competent evidence to prove that the personal injuries of which he complains actually existed. He has shown us at most that he was, prior to termination of his employment, a man of high standing and admirable personal reputation in his community. He has not however, produced any evidence whatsoever as to his personal standing and reputation subsequent to his break with Perpetual. It might well be that his standing in his community remains unimpaired. The only clear proof relating to petitioner's reputation available to us relates to his business reputation. It may be that petitioner's business reputation has suffered because of his experience with Perpetual, but that fact militates against him. See Paul Draper, 26 T.C. 201, and cf. C. A. Hawkins, 6 B.T.A. 1023. With respect to petitioner's claimed injury to his health, we have no evidence except his and other nonprofessional testimony to the general effect that subsequent to his discharge by Perpetual he became emotionally upset and unstable; that he had the appearance of a tired and *314 "beaten" man. The only physician who testified did not make a diagnosis of petitioner, but advised him to visit a psychiatrist. The evidence does not disclose that petitioner did so. The doctor did not make a determination that petitioner's emotional condition was attributable to an act or failure to act on the part of Perpetual or its board of directors. We conclude from this failure of proof that petitioner suffered no injury to his health and it follows therefrom that such injury was not the basis of payments to him by Perpetual. The record is replete with inconsistencies when viewed in the light of petitioner's contentions. Viewed as a whole we think the evidence before us amply justifies a conclusion that the amounts paid petitioner on settlement of his claims against Perpetual were to release that company from any possible liability under its employment contract and that petitioner's insistence upon settlement based on a tort claim for personal injury was an afterthought brought into being by the possible tax advantage which might result. We are strengthened in this conclusion by the fact that, although his second summons served upon Perpetual on July 1, 1959, sounded in tort, *315 petitioner's complaint, which also constituted a claim for damage resulting from injury to his health and personal reputation, was not filed until May 4, 1960, more than 9 months after the date of his settlement with Perpetual. Decision will be entered for the respondent.