VERNON L. and ELNA S. ANDERSON, Ptitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 7586-77.
United States Tax Court
T.C. Memo 1979-309; 1979 Tax Ct. Memo LEXIS 216; 38 T.C.M. (CCH) 1206; T.C.M. (RIA) 79309; August 13, 1979, Filed *216 Petitioner's employment as a tenured associate professor at Southern Illinois University was terminated in 1974. He received a lump-sum settlement equal to 1 year's salary in return for which he executed a release of all claims against the University. Held, the amount received is includable in petitioner's gross income and is not excludable under sec. 104(a)(2), I.R.C. 1954, as "damages received * * * on account of personal injuries * * *." Vernon L. Anderson, pro se. John O. Kent, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION *217 DRENNEN, Judge: Respondent determined a deficiency of $5,983 in petitioners' income tax for the taxable year 1974. The only issue presented in this case is whether the payment of $22,200 to Vernon L. Anderson by Southern Illinois University in 1974 is includable in gross income under section 61, I.R.C. 1954, [1] or is excludable from gross income under section 104. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the attached exhibits are incorporated herein by reference. Vernon L. Anderson and Elna S. Anderson, petitioners [2] herein, resided in North Hollywood, Calif., at the time they filed their petition in this *218 case. They filed a joint income tax return for the taxable year 1974. Attached to and filed with the 1974 return was the following statement: During the year ended December 31, 1974 taxpayer [Vernon L. Anderson] receive settlement from Southern Illinois University, Carbondale, Illinois, in the amount of $22,000 [sic] for professional defamation, and damage to professional reputation. Due to the nature of the amounts received, taxpayer has excluded settlement from taxable income. The actual amount received was $22,200. From 1968 until June 30, 1974, petitioner was employed as an associate professor of foreign languages specializing in German and Spanish by Southern Illinois University at Carbondale (hereinafter SIUC). Petitioner's employment contract provided tenured status which meant that the duration of the contract was indefinite assuming continued competent performance of his duties and acceptable personal behavior. On December 4, 1973, the Illinois Board of Higher Education adopted a budget which reduced the operating budget of SIUC for the fiscal year 1975 (July 1 through *219 June 30) by approximately $2,700,000. The Illinois Board of Higher Education gave the following reasons for reduction: (a) The decrease in enrollment and the projection for further decreases; (b) The unfavorable teacher-student ratio in terms of numbers of teachers to number of students; and (c) A higher than average cost of instruction per student factor and a lower credit hour production of some departments within the instructional units. As a result of the action taken by the Illinois Board of Higher Education, SIUC determined that the University would be required to cut back on some programs and to terminate some employees, including employees who had term, continuing, tenured, and nontenured appointments in order to operate within the reduced budget for the 1975 fiscal year. Consequently, during December 1973, SIUC sent notices of termination effective June 30, 1974, to 104 persons including petitioner. The names of these persons were not made public by SIUC. [3] The terminations were not based on incompetence, moral turpitude, or personal considerations and those terminated were informed by SIUC that it would assist them in finding other employment. *220 After receiving the notice of termination, Dr. Anderson met with J. K. Leasure, a vice president of SIUC, to discuss settlement at Mr. Leasure's request. Dr. Anderson specifically broached the question of tenure at this meeting and had raised the problem earlier. SIUC's stated purpose in proposing and negotiating settlements with the terminated employees was explained as settlement of any and all claims of whatever nature including action for defamation and loss of reputation against SIUC. Each person terminated would be paid an amount equivalent to 1 additional year's salary. The negotiations could then consider such matters as sabbatical leave, accumulated sick and vacation time, pending retirement considerations, past salary inequities, and other affirmative action considerations. Thereafter each settlement was negotiated individually. SIUC did not consider the settlement payments to be salary or wages. An agreement of settlement was conditioned upon execution by the terminated employee of a general, all inclusive release. SIUC proposed paying Dr. Anderson 1 year's salary or $22,500. On June 13, 1974, Leasure sent a memorandum which had been signed by Dr. Anderson to John *221 Huffman, then chief counsel for SIUC stating: Vernon L. Anderson has indicated to me that he wishes to make a settlement of the disputed claim involving his termination. He has stated to me that he is not represented by an attorney and that he has signed nothing to authorize anything for an attorney to represent him; that he is free to negotiate directly with the University. He has further advised me of this to induce me to deal directly with him. I have authorized a settlement for Vernon L. Anderson in the amount of $22,200.00. On June 14, 1974, Dr. Anderson executed a document entitled "Release of All Claims" wich states: Know all men by these presents that I, Vernon I. Anderson, in consideration of the payment of the sum of $22,200.00, by the Board of Trustees of Southern Illinois University, the receipt where of is hereby acknowledged, have remised, released and forever discharged, and by these presents, do, for myself, and for my heirs, executors, administrators, and assigns, hereby release, remise, and forever discharge the Board of Trustees of Southern Illinois University, its agents, employees, successors, and assigns, of and from any and all manner of action or *222 actions, either in law or in equity, contract, tort, or otherwise, which the undersigned might now have against the Board of Trustees of Southern Illinois University or its agents, or employees, and more particularly the claims or demands arising out of the employment or the lack thereof, as an Associate Professor in Foreign Languages and Literatures. Said release is in settlement of any and all claims arising out of the employment or the lack thereof of Vernon L. Anderson. It is understood and agreed that this settlement is the compromising of a disputed claim, which includes, but is not limited to, such things as lack of due process, professional defamation, and damage to professional reputation, and that the payment or any other agreements contained herein shall not be construed as an admission of liability on the part of the Board of Trustees or its agents, or employees, by whom liability is presently denied. This release contains the entire agreement between the parties hereto, and the terms of this release are contractual and not merely a recital. I further state that I have carefully read the foregoing release and know the contents thereof, and sign the same as my *223 own free act. The settlement payment was made on June 24, 1974.
When the names of those who were being terminated became public, they were to some extent ostracized by other members of the faculty, their reputations were lowered in the eyes of some, and many of them found difficulty finding other employment at the same level. Petitioner had not been able to find employment in his chosen field at his former level up to the time of trial, despite the fact that letters of recommendation were written for him by members of the administrative staff and faculty of SIUC. OPINION The question presented to us is whether the lumpsum settlement received by Dr. Anderson from SIUC as the consideration for the execution by him of a release of any and all claims arising out of his employment and his termination by SIUC is excluded from gross income pursuant to section 104(a)(2). [4] While petitioner appears to rely primarily on section 104(a)(2), he does argue on brief that the settlement payment was not salary or in lieu of salary, suggesting that if it was not related to his performance of services it is not includable in income. However, *224 section 61 provides that gross income includes income from whatever source derived, see also Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955), and the burden is on petitioner to prove that this was not income within the meaning of section 61 or was excludable from income by some provision in the Internal Revenue Code. Petitioner makes no direct argument that the payment does not qualify as income under section 61 and relies entirely on section 104(a)(2) in arguing that it is not includable in gross income. Section 104(a)(2) provides that damages received in a settlement agreement "on account of personal injuries" are not includable in gross income. Section 1.104-1(c), Income Tax Regs., explains that "The term 'damages received (whether by suit or agreement)' means an amount received (other than workman's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." [5]
*225 In determining whether settlement payment was intended to compensate for personal injuries, we are not concerned with the validity of the claims which were settled by the agreement or lawsuit but rather the nature of the matter settled. Seay v. Commissioner,58 T.C. 32, 36-7 (1972). We must determine the actual reason or reasons motivating the payor in reaching the settlement. Knuckles v.Commissioner,349 F.2d 610, 612-3 (10th Cir. 1965), affg. T.C.Memo. 1964-33. [6]
The record reveals that SIUC's basic intent with regard to the settlement payment and release was to forestall an action for breach of contract. The release emphasizes this in the last sentence of the first paragraph which states "and more particularly the claims or demands arising out of the employment or the lack thereof * * *." Admittedly SIUC's representatives were aware of the possibility of tort claims arising from the terminations and took care to word the release so that causes of action for tort also were precluded.However, looking at the evidence concerning the settlement between *226 SIUC and Dr. Anderson, we believe that the $22,200 payment was not intended in actuality to forestall an action for defamation or loss of reputation. Dr. Anderson never made such a claim or represented to Leasure that such a claim was contemplated by him. Moreover, we are persuaded by the record that Dr. Anderson's grievances against SIUC's actions and methods in terms of defamation and harm to his reputation, although sincere and fairly presented to us, were developed when he began to seek, without success, employment in his field. But there is nothing in the record from which we may infer that he presented or articulated his sense of actionable personal harm to SIUC while he was involved in the settlement negotiations. [7] See Knuckles v. Commissioner,supra.As respondent notes, Dr. Anderson was concerned about the disregard of his tenured status and did not intimate that he believed he had been defamed or otherwise personally harmed in an actionable sense by the fact of his termination. *227 Consequently, we must agree with respondent that the references in the release to "any" claims and to specific tort-type claims was a matter of form rather than of basic intent in this case. This conclusion is borne out by the amount of the settlement payment to Dr. Anderson. Dr. Anderson received only the equivalent of a year's salary. But #IUC was authorized to pay more than this amount if individual negotiation resulted in a larger claim being proposed. Finally, even were we to find that some portion of the settlement agreement and release actually was intended by SIUC to compenaate Dr. Anderson for tort claims, the release or settlement payment does not allocate the $22,200 amount among various claims and there is no evidence in the record upon which we can base an allocation. Consequently, respondent's determination that the settlement payment is gross income in 1974 is upheld. [8]
Decision will *228 be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year at issue, unless otherwise specified.↩
2. All references to petitioner hereinafter will be to Vernon L. Anderson.↩
3. SIUC apparently sent a list of those persons who had received termination notices during December 1973 to all colleges and universities in Illinois. This list was apparently obtained and made public by representatives of the American Association of University Professors or by someone.↩
4. Sec. 104(a)(2) provides: (a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 * * * for any prior taxable year, gross income does not include-- (2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness; ↩
5. We are not called upon to decide whether damages received for "professional defamation, and damage to professional reputation" qualifying as damages received "on account of personal injuries" within the meaning of sec. 104(a)(2). See Agar v. Commissioner,T.C.Memo. 1960-21, affd. 290 F.2d 283↩ (2d Cir. 1961).
6. Cf. Dalbo v. Commissioner,T.C.Memo. 1969-220↩.
7. It is very apparent from Dr. Anderson's testimony that he now believes the settlement was unfair to him both monetarily and legally and that he was forced by time pressure and ignorance into the settlement. Such belief is not relevant to the issue before us.↩
8. This Court has recently been faced with the identical fact situation and legal question in Gunderson v. Commissioner,T.C.Memo. 1979-99↩, involving another of the terminated employees at SIUC, which reached the same conclusion as we have here.