WILLIAM H. EVANS AND FRANCES M. EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 2623-78.
United States Tax Court
T.C. Memo 1980-142; 1980 Tax Ct. Memo LEXIS 445; 40 T.C.M. (CCH) 260; T.C.M. (RIA) 80142; April 24, 1980, Filed *445 Petitioner, a tenured University professor, received a lump sum settlement for a release of all claims against his former employer. Held, the amount received is includable in petitioner's gross income and is not excludable under sec. 104(a)(2). Carl W. Kloepfer and Mark I. Lillianfeld for the petitioners. Diane L. Fox, for the respondent. *446 IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $9,334 in petitioners' income tax for the taxable year 1974. The sole issue presented for decision is whether the payment of $25,000 to William H. Evans by Southern Illinois University at Carbondale in 1974 is includable in gross income under section 61 [1] or is excludable from gross income under section 104(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, are incorporated herein by reference. William H. and Frances M. Evans, petitioners herein, timely filed their joint Federal income tax return for 1974 with the Internal Revenue Service Center in Memphis, Tennessee. Petitioners resided in West Lafayette, Indiana when they filed their petition in this case. Because Frances M. Evans is a petitioner herein by reason of having filed a joint return with her husban d, references hereinafter to the petitioner shall refer to William H. Evans alone. *447 Petitioner was employed by Southern Illinois University at Carbondale (SIUC) as a professor of English and a professor of education commencing in 1966. Prior to his employment at SIUC, petitioner had worked as a high school English teacher, a junior college instructor and an instructor at Florida State University and the University of Illinois. Petitioner held degrees from the University of Colorado (B.A.), Syracuse University (M.A.) and Florida State University (Ph.D). Petitioner specialized in English education and gradually became well-known and highly respected in his field. In April 1967, petitioner was informed that he had attained permanent tenure as a member of the faculty of SIUC. Petitioner received a "permanent tenure appointment", which implied yearly reappointments except in cases of retirement, dismissal for cause or for reasons of financial exigency. In July 1973, petitioner was reappointed for the 1973-1974 academic year at SIUC, at a total salary of $20,565. [2]
The Board of Trustees of SIUC (the Board) operated the University with funds provided *448 by the State of Illinois. The amount of funds provided for the operation of SIUC was determined by the Illinois Board of Higher Education, an agency of the State of Illinois. SIUC's operating budget for the academic year 1973-1974 was $58,736,400. SIUC requested a budget for the academic year 1974-1975 of $78,799,529. On December 4, 1973, the Illinois Board of Higher Education rejected SIUC's request and eventually approved a budget of $55,989,700 for the academic year 1974-1975 ($2,746,700 less than SIUC's budget for the prior academic year). The Board soon afterwards adopted a resolution declaring a financial exigency at SIUC. As a part of the resolution, the Board decided to reduce personnel and cut back on all functions of the University. Accordingly, petitioner and 103 other employees were notified that their appointments would not be renewed for the academic year 1974-1975. On December 17, 1973, SIUC filed a complaint for a declaratory judgment in the Circuit Court, Jackson County, Illinois. The suit was filed by SIUC in anticipation of a multitude of suits by the 104 dismissed employees and in order to consolidate all possible actions into one trial. SIUC prayed *449 for judgment declaring the University's action proper under University bylaws and statutes. SIUC's complaint named six defendants; each defendant named was selected to represent each classification within the total group of employees terminated. Petitioner was selected at random to represent tenured faculty and was the first named defendant in the suit. Other than the named defendants, SIUC sought to keep the identities of the terminated employees confidential. Petitioner's letter of termination, dated December 13, 1973, stated that SIUC's action did not in any way express dissatisfaction with petitioner's performance of his duties. However, when petitioner was named as the first defendant in the University's complaint, petitioner was mortified. Petitioner retained H. Carl Runge, Jr. (Runge) to represent him in the declaratory judgment action. SIUC also decided to pursue individual settlements with each terminated employee. Guidelines established for settlement were flexible, but started with a basic guideline of payment by the University of an amount equivalent to one year's salary to each employee. Individual factors, such as sabbatical leave, accumulated sick and vacation *450 time, and retirement considerations could also be considered. Each settlement was then individually negotiated. Petitioner had filed a grievance against SIUC for an administrative hearing on his termination. In January 1974, petitioner was contacted by Dr. J. K. Leasure (Leasure), vice president of Academic Affairs and Provost of SIUC, regarding settlement. Petitioner was informed that any action on his grievance would have to wait until resolution of the University's declaratory judgment action. In March 1974, petitioner received an offer of a professorship at Purdue University at an annual salary of $25,000. Petitioner accepted this offer shortly thereafter. Petitioner also would receive fringe benefits from Purdue of approximately 17 percent of his annual salary. Petitioner's appointment was approved by the Board of Trustees at Purdue University around April 1, 1974. Petitioner met with Dr. Leasure in early May of 1974. Dr. Leasure could not negotiate personally with petitioner because petitioner had retained Runge as counsel in SIUC's suit. Pursuant to petitioner's request, Runge "released" petitioner to negotiate personally with Dr. Leasure. When petitioner met with *451 Dr. Leasure, petitioner claimed damage to his professional reputation by reason of being the first named defendant in the declaratory judgment action. Petitioner told Dr. Leasure that he would not settle for less than $25,000. Petitioner did not bargain for damages for injuries to his health or physical well being. SIUC's intent in the negotiations was to obtain a blanket lump sum settlement for all disputed claims. Dr. Leasure proposed to petitioner that the release contain language concerning "possible damages for personal injury such as damage to the professional reputation." Petitioner felt that actual damage to his professional reputation existed, not just possible damage, and thus demanded that the release state that it was executed in settlement of a claim "which includes, but is not limited to, such things as lack of due process, professional defamation, and damage to professional reputation." Dr. Leasure and John Huffman, attorney for SIUC, agreed to this language and on June 7, 1974, petitioner executed the following document, entitled "Release of All Claims:" Know all men by these presents that I, William H. Evans, in consideration of the payment of the sum of $25,000.00 *452 by the Board of Trustees of Southern Illinois University, the receipt whereof is hereby acknowledged, have remised, released and forever discharged, and by these presents, do, for myself, and for my heirs, executors, administrators, and assigns, hereby elease, remise, and forever discharge the Board of Trustees of Southern Illinois University, its agents, employees, successors, and assigns, of and from any and all manner of action or actions, either in law or in equity, contract, tort, or otherwise which the undersigned might now have against the Board of Trustees of Southern Illinois University or its agents, or employees, and more particularly the claims or demands arising out of the employment or the lack thereof, as a Professor of English and Secondary Education. Said release is in settlement of any and all claims arising out of the employment or the lack thereof of William H. Evans. It is understood and agreed that this settlement is the compromising of a disputed claim, which includes, but is not limited to, such things as lack of due process, professional defamation, and damage to professional reputation, and that the payment or any other agreements contained herein shall *453 not be construed as an admission of liability on the part of the Board of Trustees or its agents, or employees, by whom liability is presently denied. This release contains the entire agreement between the parties hereto, and the terms of this release are contractual and not merely a recital. I further state that I have carefully read the foregoing release and know the contents thereof, and sign the same as my own free act. On June 10, 1974, petitioner received $25,000 from the Board of Trustees of Southern Illinois University. Petitioner did not report this sum as income in his 1974 joint Federal income tax return. Respondent determined that the $25,000 should be included in petitioner's income for 1974 and accordingly issued a statutory notice of deficiency. OPINION The sole issue for decision is whether the $25,000 paid to petitioner by SIUC is gross income to petitioner. Petitioner argues that SIUC paid petitioner solely as a settlement of petitioner's claim of damage to his professional reputation and thus the $25,000 must be excluded from income under section 104(a)(2). [3] Respondent contends that the settlement encompassed a number of possible claims, based *454 on contract and tort, that payment for damages to professional reputation is merely a compensation substitute and that the failure to prorate the settlement to petitioner's various claims renders the entire amount taxable. We agree with respondent. Petitioner contends that the settlement reached with SIUC was solely for the purpose of compromising his claim of professional defamation and thus an allocation of the $25,000 is not required. In determining whether a settlement was intended as compensation for personal injuries the validity of the claim is irrelevant, Seay v. Commissioner, 58 T.C. 32 (1972). Petitioner must show the nature of the claim which was the basis of settlement. To determine the nature of the claim settled, the focal point is the intention *455 of the payor, Knuckles v. Commissioner, 349 F.2d 610 (10th Cir. 1965), Agar v. Commissioner, 290 F.2d 283 (2d Cir. 1961). Petitioner argues that the release contained several "boilerplate" clauses pertaining to employment claims merely for SIUC's convenience, since petitioner had already accepted a financially equivalent position with Purdue and had negotiated exclusively for damages to his professional reputation. We disagree. The intent of SIUC was to settle all disputed claims, whether in tort or contract, arising out of the termination of employment of petitioner. Guidelines for negotiation were established based on one year's salary plus other employment considerations (sabbatical, sick leave, etc.). The release specifically mentioned Dr. Evans' "claims and demands arising out of the employment or the lack thereof, as a Professor of English and Secondary Education," and states that the release "is in settlement of any and all claims arising out of the employment or the lack thereof of William H. Evans." Further, the release contained an express denial of liability by the University. Petitioner suggests that the phrase "the compromising *456 of a disputed claim" establishes the singular nature of that claim, i.e. a claim solely for professional defamation. [Emphasis supplied.] However, petitioner himself negotiated for the clause following the language he relies upon: which includes, but is not limited to, such things as lack of due process, professional defamation, and damage to professional reputation * * *. [Emphasis supplied.] Petitioner's reliance on the singular "a disputed claim" is patently inconsistent with the clause that he specifically negotiated for in the settlement discussions. Based upon the entire record before us, we hold that SIUC intended to settle any possible claims based on petitioner's employment contract as well as upon petitioner's claim of professional defamation. [4]
Furthermore, the $25,000 paid by SIUC was a lump sum with no proration to the various type of claims that may have existed. *457 In the absence of an allocation of the settlement among the various claims, all of the payment must be included in petitioner's gross income, Durkee v. Commissioner, 162 F.2d 184 (6th Cir. 1947). [5]
*458 Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.↩
2. Petitioner was paid for 9 months of each year. Petitioner's monthly salary for 1973-1974 was $2,285.↩
3. SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS. (a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include-- * * *
(2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness;↩
4. We do not reach the issue of whether, as petitioner argues, a meaningful distinction does not exist between professional defamation and personal defamation. See Agar v. Commissioner, 290 F.2d 283 (2nd Cir. 1961). Cf. Rev. Rul 58-418, 1958-2 C.B. 18↩.
5. We have previously decided the includability in income of the SIUC payments with regard to two other terminated employees. In Gunderson v. Commissioner, T.C. Memo. 1979-99, petitioner was an instructor at SIUC who executed a release similar to Dr. Evans' release. We held that SIUC intended to make a lump sum settlement of all claims arising out of the employment or lack thereof of terminated personnel. The petitioner in Gunderson did not assert any claim based on tort and even if such a claim had been made no allocation of the settlement among the claims was made. Accordingly, the entire amount of the settlement was income. Anderson v. Commissioner, T.C. Memo. 1979-309, involved a tenured professor who executed a release identical to the release executed by Dr. Evans. The petitioner did not assert any claim for professional defamation in his negotiations with SIUC. Again, there was no allocation of the settlement (even had petitioner asserted tort claims) and the entire amount was held to be gross income, based on the intent of SIUC to make a lump sum settlement of all↩ claims.