JOHN E. GALLIGAN, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Galligan v. Commissioner
Docket No. 25876-91
United States Tax Court
T.C. Memo 1993-605; 1993 Tax Ct. Memo LEXIS 624; 66 T.C.M. (CCH) 1669; December 21, 1993, Filed *624 P, a long time employee of G, was terminated from employment pursuant to an agreement executed by P and G in 1986. Under the agreement, P was to receive certain payments over a 6-year period. P received amounts according to the terms of the agreement from 1986 through 1988. In 1988, P and G agreed to accelerate the remaining payments into a single lump-sum payment. P did not report this lump-sum payment on his return for 1988. P claimed the sec. 104(a)(2), I.R.C., exclusion for damages received pursuant to an agreement entered into in lieu of prosecution of a claim based on personal injuries or sickness. R determined a deficiency and addition to tax on the grounds that P did not qualify for the sec. 104(a)(2), I.R.C., exclusion. 1. Held: P is not eligible for the sec. 104(a)(2), I.R.C., exclusion because P failed to prove that the agreement was entered into in lieu of prosecution of a claim based on personal injuries or sickness. 2. Held, further, P has not shown that he should be excused from the additions to tax determined by R, pursuant to sec. 6661, I.R.C.
John E. Galligan, Pro se. For respondent: William J. Gregg and Donald Schwartz. HALPERN
HALPERN
MEMORANDUM *625 FINDINGS OF FACT AND OPINION HALPERN, Judge: By notice of deficiency dated August 28, 1991, respondent determined a deficiency of $ 25,251 in petitioner's Federal income tax for 1988, along with an addition to tax, in the amount of $ 6,313, under section 6661. The issues presented are: (1) Whether amounts received by petitioner from his former employer constitute excludable (tax-exempt) damages received on account of personal injuries, and (2) whether petitioner is liable for an addition to tax for substantially understating his income tax liability. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioner's legal address was in Brooklyn, New York. From February 1, 1967, until June 2, 1986, petitioner was employed as an attorney by Grumman Corporation (Grumman). On June 2, 1986, petitioner and Grumman *626 executed an agreement (the agreement) terminating petitioner's employment by Grumman. The full text of that agreement is as follows: This agreement is entered into between John E. Galligan, hereinafter referred to as Galligan and Grumman Corporation, hereinafter referred to as Grumman effective as of the date written below. As it has been determined that Grumman no longer requires the services of Galligan for various reasons which need not be recited herein, and Galligan acknowledges that he has been advised of Grumman's reasons and accepts same in consideration of the performance of the promises contained herein. Therefore, it is agreed that, effective as of the date of this agreement, Galligan is no longer an employee of Grumman. Consistent with the foregoing, Galligan agrees that he will not represent himself as being an employee of Grumman nor attempt to do anything in a representative capacity for or on behalf of Grumman. Grumman agrees that, provided Galligan makes no claim against Grumman of any nature and does nothing which is otherwise adverse or inimical to the interests of Grumman, it will pay Galligan his full salary together with all fringe benefits, including *627 pension accruals, through May 31, 1987. Thereafter, Grumman will pay Galligan annually on June 1 of each year for a period of five years (the final payment being due on June 1, 1991) the sum of $ 30,000. Should Galligan do something which is prohibited as specified herein, such payments will cease forthwith with no obligation on the part of Grumman to do anything further under this agreement either by way of payment, notification of cessation of payment or otherwise. It is also understood that Galligan has no obligation to do any work for Grumman in the nature of legal services or otherwise to earn these monies. However, Galligan shall furnish Grumman with information it may request regarding those matters and/or areas in which Galligan was involved while he was employed by Grumman. Also, should Galligan not live for the period contemplated by the payment process of this agreement, the monies otherwise payable to him will be paid to the personal representative of his estate. In acknowledgement of their acceptance of the above terms, Galligan and Grumman have executed this agreement and such execution has been duly witnessed.
The agreement was signed by petitioner and Grumman's *628 agent and witnessed on June 2, 1986. Pursuant to the agreement, Grumman paid petitioner's full salary with benefits and pension accruals from June 1, 1986, through May 31, 1987. On or about June 1, 1987, petitioner received the first $ 30,000 payment. As of June 1, 1987, petitioner was entitled to receive, and did receive, pension payments under Grumman's pension plan. In January 1988, petitioner received the second $ 30,000 payment. [1] All of those amounts were reported by petitioner as income for the relevant taxable years. In 1988, petitioner and Grumman agreed to accelerate the three remaining $ 30,000 payments into a single (discounted) lump-sum payment of $ 76,500. Petitioner received that payment on September 12, 1988. Petitioner did not include the $ 76,500 payment as an item of gross income for 1988 or for any other taxable year. Robert W. Bradshaw (Bradshaw) and Thomas L. Genovese (Genovese) *629 were Grumman's senior human resources officer and general counsel, respectively, during 1986. Both Bradshaw and Genovese had supervisory positions over petitioner during the period before petitioner's termination. Bradshaw, Genovese, and a third Grumman employee were principally responsible for the decision to terminate petitioner's employment, as well as preparation of the agreement. Bradshaw and Genovese presented the agreement to petitioner on June 2, 1986. No negotiation was permitted. Petitioner read the agreement, responded affirmatively, and both parties executed it by the meeting's end. The agreement was structured to bring petitioner, who was then 59, to the age of 60, with full salary, pension accruals, and benefits, and then go beyond that with annual payments of $ 30,000 for the next 5 years. Under the Grumman pension plan in effect on June 6, 1986, petitioner would have been ineligible for pension benefits until he reached age 65, if he had otherwise retired before reaching age 60. The agreement, thus, obtained for petitioner pension benefits at age 60 (rather than petitioner's having to wait until age 65). For some time prior to his termination, petitioner's *630 work habits had created difficulties for Grumman. Specifically, petitioner was late in completing assignments and was frequently absent from his office without explanation. Bradshaw had discussed those problems with petitioner on a number of occasions before June 2, 1986. Those difficulties were the primary cause for petitioner's termination. As of the time of trial in this case, petitioner had never filed a lawsuit against Grumman in any Federal, State, or local court or initiated any administrative proceeding against Grumman before the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, or Grumman's Equal Employment Opportunity Commission Department. OPINION In his petition, petitioner asserts that the $ 76,500 that he received from Grumman in 1988 and failed to report was the tax-free proceeds of a loan (an advance on the moneys owed him by Grumman). At trial, however, petitioner stated that he was no longer pursuing that theory. Also, petitioner has not supported that theory on brief. Therefore, we deem petitioner to have abandoned that theory, and we will not address it. By an amendment to his petition, petitioner claims that the *631 amounts in question were received pursuant to a settlement of claims based on personal injuries. We will address that claim. I. Excludability Under Section 104(a)(2)
Gross income includes all income from whatever source derived. Sec. 61(a). Gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Sec. 104(a)(2). "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. (emphasis added). Petitioner's position, simply put, is that the agreement constitutes a settlement agreement within the meaning of section 1.104-1(c), Income Tax Regs., because it settled petitioner's claim for damages for personal injury. Since petitioner contends that the agreement constitutes a settlement agreement, we will treat it as such, and determine whether petitioner has carried his burden of proving that it settled petitioner's claim *632 for damages on account of personal injury. See Rule 142(a) (petitioner bears the burden of proof). We find that petitioner has not carried that burden. In determining whether amounts received pursuant to a settlement agreement constitute damages received on account of personal injury, we look to the nature of the claim that was settled, rather than to its validity. Stocks v. Commissioner, 98 T.C. 1, 10 (1992). Determining the nature of the claim presents a question of fact. Id. at 11. The agreement lacks express language stating what the settlement amount was paid to settle. The most important factor in determining any exclusion under section 104(a)(2) is "the intent of the payor" as to the purpose in making the payment. Id. at 10. The purposes of the payor (Grumman) in making the payments called for by the agreement are not clear from the face of the agreement. The relevant portion of the agreement states: it has been determined that Grumman no longer requires the services of Galligan for various reasons which need not be recited herein, and Galligan acknowledges that *633 he has been advised of Grumman's reasons and accepts same in consideration of the performance of the promises contained herein.
Nevertheless, petitioner argues that Grumman's purpose in whole or in part was to settle certain actual or potential claims for tortious personal injury. On brief, petitioner mentions the following actual or potential claims: wrongful discharge, unlawful discriminatory practices, age discrimination, and defamation. The weight of evidence, however, is against petitioner. Petitioner has not shown that Grumman intended its payments under the agreement to settle any such claims. First, no such claims were testified to by Grumman's agents, Bradshaw and Genovese, who, with another, were responsible for drafting the agreement and entering into it with petitioner. When asked by the Court to summarize the reasons why Grumman made the payments, Mr. Bradshaw, Grumman's Senior Human Resources Officer in 1986, replied: We were impressed, Your Honor, by the fact that Mr. Galligan had worked for the company for a good long time; that in certain respects his contributions were quite valuable. In others, they were unsatisfactory. We felt he deserved better *634 treatment than to be simply let go, given his many years of service. We were also mindful of his pension entitlement situation, and felt that the reasonable fair thing to do would be to carry him to that point where he gets a pension at age 60 and then go beyond that with the $ 30,000 sums for the next five years, as a way of helping him bridge his employment with Grumman to whatever the future might hold for him. I must say, I think the settlement was fair to the company and to Mr. Galligan, and in some ways generous.
Mr. Genovese, Grumman's general counsel, agreed with Bradshaw's statements. Second, Mr. Genovese, who, as Grumman's general counsel in 1986, would have reason to know, testified that he was unaware of any employment-related claim made by petitioner against Grumman. Indeed, we have found that petitioner has never taken any formal steps to make any such claims. Notwithstanding the evidence that Grumman had no intent to settle a claim based on personal injuries, petitioner asserts on brief that he did have claims against Grumman for tortious injuries, which arose out of the act of Grumman's discharging petitioner. For instance, petitioner alleges that, on account *635 of such discharge by Grumman, he suffered age discrimination. Petitioner argues that, essentially, his claims were created and settled by the same event, i.e., by Grumman's proposing, and his accepting, the agreement. As evidence of his claims, petitioner points to the language of the agreement in the nature of a release and the language that would cause him to forfeit benefits granted by the agreement if he were to make any claims against Grumman. Petitioner's implicit argument is that the release and forfeiture language of the agreement are proof that he could have, or might have, made a tort or tort-like claim. Petitioner's argument does not carry the day. It is not sufficient for petitioner to show that, for instance, he was old enough to file an age discrimination claim if, indeed, he had been discriminated against. Petitioner simply has not convinced us that Grumman recognized any claims for personal injury that it intended to settle. According to the agreement, petitioner was privy to the reasons he was discharged and accepted those reasons in consideration of the performance of the promises contained in the agreement. Neither Bradshaw, Genovese, nor petitioner testified *636 that settlement of any particular claims (or, indeed, any claims at all) motivated the settlement and forfeiture language in the agreement, upon which petitioner would rest his case. Petitioner has failed to convince us that Grumman's agents had in mind age discrimination, or some other tortious injury, any more than they had in mind any other possible cause of action that petitioner might have initiated. If we were to accept petitioner's argument, then any general release might, in theory, be viewed to cover some potential claims for personal injuries, so as to cause at least some of a related payment to be excludable under section 104(a)(2). The existence of an agreement that contains a release of undisclosed or potential claims is not sufficient evidence on its own that the amounts paid under that agreement are eligible for section 104(a)(2) exclusion. We do not believe that Congress intended section 104(a)(2) to have the broad reach that petitioner advocates. On the facts before us, we cannot conclude that Grumman recognized any claims for personal injuries, accorded them any weight whatsoever, or allocated any portion of the consideration paid pursuant to the *637 agreement to settling such claims. Accordingly, we hold the payments in question not to be excludable from gross income pursuant to section 104(a)(2). In the amendment to his petition, petitioner asserted not only that the $ 76,500 lump-sum amount constituted damages received on account of personal injury but also that the $ 30,000 and pension amounts received by him in 1988 were erroneously reported and that they too should have been excludable from income under section 104(a)(2), since they were received pursuant to the agreement. Consistent with that argument, petitioner requested a refund of the taxes erroneously paid in his amended petition. For the reasons discussed above, we deny petitioner's request for refund of taxes paid on those other amounts received pursuant to the agreement. II. Substantial Understatement of Income Tax
Respondent determined that petitioner has substantially understated his income tax liability for 1988. The amount of an addition to tax for a substantial understatement of income tax for a taxable year is equal to 25 percent of the amount of any underpayment attributable to such substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). *638 For the year in issue, a substantial understatement is an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). Petitioner's understatement is substantial. A taxpayer generally is liable for the addition determined by respondent unless he can demonstrate that the understatement must be reduced because substantial authority supported the position taken by petitioner or he adequately disclosed in his return or attachment thereto the relevant facts of that position. Sec. 6661(b)(1)(B). Petitioner has not shown that his position was supported by substantial authority or that it was based upon facts that were adequately disclosed when he filed his return, and he has not made a showing that would permit the Secretary to waive the addition. Rule 142(a); sec. 6661(c). Therefore, respondent's determination shall be upheld. Decision will be entered for respondent. Footnotes
1. The record contains no explanation of why the second payment was made before the date specified in the agreement.↩