Albert J. TAGGI & Ann D. Taggi, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 1793, Docket 94–6008.

United States Court of Appeals, Second Circuit.

Argued June 23, 1994.

Decided Sept. 12, 1994.

Charles A. Bradley, White Plains, NY (McCullough, Goldberger & Staudt, of counsel), for plaintiffs-appellants.

Judith L. Mogul, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before NEWMAN, Chief Judge, VAN GRAAFEILAND and LEVAL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Albert J. Taggi and his wife, Ann, appeal from a summary judgment of the United States District Court for the Southern District of New York (Goettel, J.) denying their claim for a tax refund. *See* 835 F.Supp. 744 (S.D.N.Y.1993). We affirm.

In December 1985, Albert Taggi, a long-time employee of AT & T Communications, Inc. ("AT & T"), was told that his employment would be terminated as part of a general reduction in AT & T's workforce. He was offered a choice of two termination payment plans. Under one option, he would receive a lump sum "termination payment" equal to three percent of his base pay, multiplied by the number of years he had worked for AT & T, up to twenty. Under the other, he would receive a lump sum "termination payment" of five percent of his base pay, multiplied by his years of service, up to twenty. The sole difference in the two plans was that AT & T conditioned receipt of the higher payment on the signing of a Separation Agreement and Release which purported to be a "full legal release."

The Separation Agreement and Release provided in pertinent part that the signatory employee gave up "any and all claims ... and causes of action with respect to, or arising out of" the employee's employment or termination of employment, including but not limited to "claims arising under federal, state, or local laws prohibiting age, sex, race or any other forms of discrimination or claims growing out of any legal restrictions on the Company's right to terminate its employees."

Taggi signed the Separation Agreement and Release on December 24, 1985 and participated thereafter in the higher payment plan. The Taggis treated the full termination payment of approximately $49,500 as income on their 1986 federal tax return.

In 1987 Taggi and eleven other terminated managers sued AT & T in the Southern District of New York, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (the "ADEA"). The district court dismissed their complaint, holding that the releases were valid and that the

managers had waived their rights to sue AT & T. This Court affirmed. *See Bormann v. AT & T Communications, Inc.*, 875 F.2d 399 (2d Cir.), *cert. denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989).

Thereafter, plaintiffs filed a claim for a refund of overpaid tax for 1986 totalling $7,649.40. They asserted that the additional two percent of Albert's base pay that he received from AT & T for his choice of the second termination payment option should have been excluded from their 1986 income as "damages received (whether by suit or agreement ...) on account of personal injuries or sickness" under section 104(a)(2) of the Internal Revenue Code. After the IRS disallowed their claim, the Taggis brought the instant action.

■ Section 61(a) of the Internal Revenue Code states that except as otherwise provided, "gross income means all income from whatever source derived." 26 U.S.C. § 61(a). The Supreme Court long has held that this definition is to be given liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). Thus, while it is well-established that section 61(a) is to be broadly construed, it is equally well-established that exclusions from income are to be narrowly construed. *See Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949); *United States v. Centennial Savings Bank FSB*, 499 U.S. 573, 583–84, 111 S.Ct. 1512, 1518–19, 113 L.Ed.2d 608 (1991). A taxpayer claiming an exclusion from income bears the burden of proving that his claim falls within an exclusionary provision of the Code. *See Galligan v. Commissioner*, 66 T.C.M. (CCH) 1669, 1671, 1993 WL 526964 (1993); *Gunderson v. Commissioner*, 38 T.C.M. (CCH) 464, 465, 1979 WL 3189 (1979); *Anderson v. Commissioner*, 38 T.C.M. (CCH) 1206, 1208, 1979 WL 3368 (1979).

The exclusion relied on by appellants in the instant case, 26 U.S.C. § 104(a)(2), reads as follows:

§ 104. Compensation for injuries or sickness

(a) In general.— ... gross income does not include—

. . . .

(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

. . . .

Treasury Regulation § 1.104–1(c) provides:

(c) *Damages received on account of personal injuries or sickness.* Section 104(a)(2) excludes from gross income the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

26 C.F.R. § 1.104–1(c).

■ Because no prosecution of a suit for personal injuries preceded Taggi's execution of the five-percent-of-pay agreement, his right to exclude a portion of this payment from his gross income depends upon whether the agreement constituted a "settlement agreement ... in lieu of such prosecution." The answer to this question depends, of course, upon the meaning of the term "settlement agreement" in the context in which it appears. A word or phrase may take on a different meaning depending upon the setting in which it is used. *See Patmon, Young & Kirk, Professional Corp. v. Commissioner*, 536 F.2d 142, 144 (6th Cir.1976); *Musselman Hub–Brake Co. v. Commissioner*, 139 F.2d 65, 68 (6th Cir.1943). Indeed, the concepts employed in construing one section of a statute are not necessarily pertinent when construing another section of the same statute. *Rohmer v. Commissioner*, 153 F.2d 61, 65 (2d Cir.), *cert. denied*, 328 U.S. 862, 66 S.Ct. 1367, 90 L.Ed. 1632 (1946). *See AMP, Inc. v. United States*, 492 F.Supp. 27, 32 (M.D.Pa. 1979) (citing *Don E. Williams v. Commissioner*, 429 U.S. 569, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977)); *see also Conforte v. Commission-*

*er*, 692 F.2d 587, 591 (9th Cir.1982). Where the issue is an asserted exclusion from taxable income, it is imperative that a "settlement agreement" involve a bona fide dispute. This prevents the use of a contrived "settlement" designed to avoid taxation of the proceeds. *See, e.g., Knuckles v. Commissioner*, 23 T.C.M. (CCH) 182, 184–85, 1964 WL 576 (1964), *aff'd*, 349 F.2d 610, 613 (10th Cir. 1965).

■ As generally used in the field of litigation, "[a] settlement is an agreement to terminate or forestall all or part of a lawsuit." *Gorman v. Holte*, 164 Cal.App.3d 984, 211 Cal.Rptr. 34, 37 (1985). It is " 'the conclusion of a disputed or unliquidated claim, and attendant differences between the parties, through a contract in which they agree to mutual concessions in order to avoid resolving their controversy through a course of litigation.' " *McCleary v. Armstrong World Indus., Inc.*, 913 F.2d 257, 259 (5th Cir.1990) (quoting *Priem v. Shires*, 697 S.W.2d 860, 863 n. 3 (Tex.App.—Austin, 1985, no writ)). For income tax purposes, no less should be required.

The Tax Court consistently has stressed the importance of a bona fide dispute over excludable damages. *See, e.g., Glynn v. Commissioner*, 76 T.C. 116, 121, 1981 WL 11320 (1981) ("Here, no claim for personal injury was ever made."), *aff'd*, 676 F.2d 682 (1st Cir.1982); *Whitehead v. Commissioner*, 41 T.C.M. (CCH) 365, 368, 1980 WL 4334 (1980) ("Furthermore, there was no evidence presented that petitioner asserted any tort claims during the settlement negotiations with the university."); *Anderson v. Commissioner, supra*, 38 T.C.M. (CCH) at 1208 ("Dr. Anderson never made such a claim or represented to Leasure that such a claim was contemplated by him [for defamation or loss of reputation].").

The following excerpt from *Kurowski v. Commissioner*, 917 F.2d 1033, 1036 (7th Cir. 1990), illustrates the proper application of this rule:

> Except for after-the-fact self-serving testimony by the taxpayer, nothing in the record shows that the settlement was to compensate taxpayer for any "personal injuries or sickness" within Section 104(a)(2) of the

Code. Indeed, no such claim had been made in the settlement negotiations. It is axiomatic that while taxable income should be broadly construed, exclusions to income should be narrowly defined. *Commissioner v. Miller*, 914 F.2d 586, 590 (4th Cir. 1990) (holding that punitive damages are not excludable income within the meaning of Section 104(a)(2)). As in *Glynn v. Commissioner*, 76 T.C. 116 (1981), affirmed without published opinion, 676 F.2d 682 (1st Cir.1982), since no claim for personal injuries was ever made, the settlement amounted to severance pay.

■ Taggi concedes that he had made no ADEA claims against AT & T at the time the Separation Agreement and Release was signed. Appellants' Brief at 4. Moreover, he acknowledged in the agreement itself that AT & T "has not (a) discriminated against me, b) breached any contract with me or c) otherwise acted unlawfully toward me." It is significant also that AT & T was willing to pay Taggi $29,700 as a termination payment without deeming it necessary to secure a release of any sort. The record does not indicate that this offer was met by any claims or threats of litigation. So far as appears, AT & T added $19,800 to its offer in exchange for the general release at issue herein, again without any claims or threats of suit. Viewing the Separation Agreement and Release from the standpoint of the federal income tax law, we agree with the district court that the $19,800 payment did not constitute a "settlement agreement entered into in lieu of ... [a legal suit or action based upon tort or tort type rights]."

We also agree with the district court that, since the release was all-encompassing, including both contract and tort claims, the court was not in a position to apportion the payment among the various possible claims. *See Villaume v. United States*, 616 F.Supp. 185, 190 (D.Minn.1985); *Whitehead v. Commissioner, supra*, 41 T.C.M. (CCH) at 369; *Evans v. Commissioner*, 40 T.C.M. (CCH) 260, 263, 1980 WL 3988 (1980); *Gunderson v. Commissioner, supra*, 38 T.C.M. (CCH) at 465. AT & T presented the same Separation Agreement and Release to all the employees who were being terminated, and it was not

tailored to meet Taggi's individual claims. At least Taggi offered no evidence to this effect.

The Government urges this Court to affirm the district court, not only on the grounds above stated, but also on a broader ground not reached by the district court, namely, that monies received in the disposition of an ADEA claim are not excludable under section 104 because they are not compensation for personal injury or sickness. This issue, which, prior hereto, we have not been asked to address, is the subject of substantial disagreement in other circuits. *Compare Maleszewski v. United States*, 827 F.Supp. 1553 (N.D.Fla.1993) *and Shaw v. United States*, 853 F.Supp. 1378, 1382 (M.D.Ala.1994) *with Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950 (5th Cir. 1993) *and Rice v. United States*, 834 F.Supp. 1241, 1244-45 (E.D.Cal.1993). Because we agree with the district court's resolution of this matter on the grounds above stated, we too find it unnecessary to address this controversial issue.

The judgment of the district court is affirmed.