397 So.2d 428 (1981)
Donald J. HAGA, Appellant,
v.
CLAY HYDER TRUCKING LINES, Appellee.
No. WW-448.
District Court of Appeal of Florida, First District.
April 28, 1981.
*429 Harry G. Goodheart, III of Goodheart & Logan, Bradenton, for appellant.
Robert C. Barrett and Bernard J. Zimmerman of Akerman, Senterfitt & Eidson, Orlando, for appellee.
JOANOS, Judge.
This workers' compensation appeal presents a set of extremely unique circumstances combined with a request for highly extraordinary relief. Despite the admonition that "hard cases make bad law," we find that the record in this case requires a reversal of the deputy commissioner's order denying the claimant's request for the installation of a swimming pool. We do not reach this result without considerable concern that an opinion in this case may be misconstrued as an acceptance of the medical necessity of swimming pool installation in cases involving circumstances less extreme than those specifically presented here. Nonetheless, our duty is to judge the case on the particular facts before us and the fear that our decision may not be applied as we intended should not prevent a correct decision in the case at hand. Our intent, however, is that the decision in this case apply solely to the unusual facts presented.
On November 12, 1977 the claimant's tractor-trailer overturned and caught on fire. The claimant was trapped under the wreckage for three hours resulting in third and fourth degree burns to most of the lower half of his body. Dr. Bingham, Chief of Plastic and Reconstructive Surgery and Director of the Burn Unit at the University of Florida Medical Center, treated the claimant's severe burn injuries which required, among other things, below-the-knee amputation of the right leg, above-the-knee amputation of the left leg, a colostomy, and extensive skin and muscle grafts. After his release from the Medical Center, the claimant continued under Dr. Bingham's care but was also treated by Dr. Moreau, a rehabilitation and physical medicine specialist who fitted claimant with prostheses (artificial limbs). Due to the delicate nature of the grafted and scarred skin tissue, however, claimant experienced numerous complications with the skin on his leg stumps which made use of prostheses difficult. These problems were compounded by the fact that claimant gained a great deal of weight after the accident despite attempts to control his weight through various diets. Dr. Bingham explained the weight gain was caused by the massive caloric intake (about 5,000 per day) that claimant was required to consume to give him sufficient energy for healing.
To control claimant's weight and to provide claimant with cardiovascular exercise and exercises to increase strength and range of motion in his lower extremities without damaging the scarred and grafted skin, Mr. Moreau recommended that a swimming pool be installed in claimant's home. Dr. Bingham concurred with this recommendation and prescribed that claimant swim twice daily. The employer refused to install a pool for claimant, but gave *430 him a life membership to a health spa instead. Although the spa was located 25 miles from claimant's home and available for use only 3 days a week, claimant did try several times to use the spa's pool. Unfortunately, the pool lacked facilities for safe ingress and egress by an amputee. Claimant fell twice while trying to enter the pool, once breaking the skin on a leg stump which meant weeks of healing before prostheses could be used again. Claimant's physicians found the spa alternative to be unacceptable for several reasons: the limited availability of the spa pool and its lack of facilities for the handicapped, as well as a public pool's greater risks of contamination and embarrassment to claimant. In addition, the doctors did not feel that it was advisable for claimant to travel the distance to and from the spa pool.
A hearing was held on June 2, 1980 dealing solely with the issue of whether the employer should be required to pay for the installation of a swimming pool as a medical necessity. The claimant's testimony and depositions of Dr. Bingham and Dr. Moreau were entered into evidence, as were the depositions of Dr. Shea, an orthopedic surgeon with experience in amputation rehabilitation, and Dr. Kurth, Chief of Physical Medicine and Rehabilitation at Florida Hospital in Orlando. The latter two doctors testified on behalf of the employer. Neither doctor ever examined (or even saw) claimant, but they did state that they had reviewed the depositions of claimant, Dr. Bingham and Dr. Moreau. In addition, Dr. Kurth called Dr. Moreau the day before the hearing to discuss the case with him.
Both of claimant's treating physicians testified that installation of a swimming pool with handicapped facilities was medically necessary. Dr. Moreau felt that swimming was the only non-traumatic way to exercise practically all the muscles of claimant's body without endangering his skin. According to the doctor, walking on prostheses was not a viable alternative because prolonged walking caused too much friction on claimant's scarred stumps. Physical therapy would not suffice because it was cost prohibitive (about $35 a day) and would not benefit claimant's heart and lungs. Dr. Moreau also testified that he felt there was no other exercise that would "build up" claimant's lower extremities without hurting his skin. This opinion was supported by the claimant's testimony that he had tried to do sit-ups but the friction on the grafted area of his lower back caused a "pressure sore" which required eight to ten weeks to heal. Dr. Bingham agreed that swimming would be the most beneficial total body exercise, would have good effects on claimant's skin, and would minimize chances of injury to the easily damaged scar tissue. When asked if use of a whirlpool plus upper body exercises would be sufficient, Dr. Bingham stated that such a routine would not provide adequate exercise for claimant's lower extremities.
Both Dr. Shea and Dr. Kurth, who testified by deposition for the employer, stated that they felt a pool would be helpful to claimant but not medically necessary. As an alternative to swimming, Dr. Kurth felt that claimant's rehabilitation and exercise program should include extended walking (contrary to Dr. Moreau's recommendation), wheelchair exercises, weight-lifting with his stumps, and dieting. Dr. Kurth did not think that his opinion would change if he examined claimant, but he admitted that he would not prescribe exercises without an examination. Dr. Shea's recommendation was similar. He also suggested diet control and wheelchair exercises as well as pushups, sit-ups, and use of barbells. When questioned concerning his knowledge of claimant's condition, however, Dr. Shea stated that he did not know the extent of claimant's burn injuries and was unaware of claimant's present rehabilitation program. In addition, he "assumed" that claimant could not wear prostheses and opined that "the guy's never going to walk again" even though the depositions of the treating physicians (which were used as a basis for Dr. Kurth's and Dr. Shea's testimony) described claimant as being able to use prostheses. Finally, Dr. Kurth and Dr. Shea admitted that they lacked expertise in Dr. Bingham's field and would defer to his *431 opinion on claimant's skin condition and treatment.
In finding that installation of a pool was not medically necessary in this case, the deputy commissioner accepted the deposition testimony of Dr. Kurth and Dr. Shea and rejected the deposition testimony of claimant's treating physicians. Since the credibility of the medical witness' in-court testimony is eliminated as a fact finding function by use of depositions, this court is in as good a position to evaluate and weigh the medical testimony as the deputy. Mendivil v. Tampa Envelope Manufacturing Co., 233 So.2d 5 (Fla. 1970); Morrison Merchandising Corp. v. Rambeau, 377 So.2d 234 (Fla. 1st DCA 1979); Swift & Co. v. Kesler, IRC Order 2-3102 (1977); cert. denied 354 So.2d 982 (Fla. 1977).
Although a physician's failure to examine the claimant and a physician's lack of expertise in an area in which he testifies does not prevent admission of the testimony, those factors do go to the weight of the evidence. See Lombardo v. BBC Agency, Inc., IRC Order 2-3049 (1976). In this case, Dr. Kurth and Dr. Shea testified without the benefit of examining the claimant and without expertise in the field of burn treatment and reconstructive surgery. If this case had involved a more routine injury, we might agree with the deputy that an examination of the claimant would not have added much to the reliability of the testimony. The claimant's injuries were, however, far from routine. The amputation of both legs is, by its nature, an injury which requires a rehabilitation program suited to the temperament, motivation, and physical condition of the injured person. That injury was made even more unique in this case by the third and fourth degree burns which resulted in skin grafts and scar tissue covering most of claimant's body from the waist down.
The rehabilitation program prescribed by Dr. Bingham and Dr. Moreau was designed to give the claimant cardiovascular exercise, muscle tone for the lower extremities, skin conditioning treatment, and assistance in weight loss  all without endangering the sensitive grafted and scarred tissue. Neither of the programs suggested by Dr. Kurth or Dr. Shea provided the complete range of benefits which resulted from the swimming program,[1] but more importantly, their recommendations did not focus on the condition and treatment of claimant's skin. Experts in rehabilitative therapy, Doctors Kurth and Shea were primarily concerned with exercises compatible with a double amputee. It was the claimant's delicate skin condition, however, which prompted claimant's treating physician's to reject the type of exercise alternatives suggested by Dr. Kurth and Dr. Shea.[2] As the witness most directly familiar with claimant's skin condition and the only witness qualified in that area, Dr. Bingham's testimony concerning treatment of the grafted and scarred areas logically should carry more weight.
Dr. Kurth's admitted reluctance to prescribe an exercise program without examining the claimant brings out another factor relative to the weight of the treating doctors' testimony in this case. Dr. Bingham and Mr. Moreau, as the claimant's treating physicians, were responsible for the success or failure of their prescribed medical treatment. The burden of that responsibility was apparently recognized by Dr. Kurth who would require at least an examination of the claimant before he actually attempted *432 to prescribe treatment. It seems obvious that due to this added responsibility, a doctor would take more care to prescribe treatment than he would to recommend it in the abstract.
The ultimate responsibility of the treating physician to his patient also leads to another problem regarding the conflicts between the treating and non-treating doctors. By resolving the conflict in favor of the non-treating physicians, the deputy has, in effect, sanctioned an exercise program which the treating doctors deemed inadvisable in one or more aspects. Without sufficient evidence that claimant was actually capable of engaging in those exercises,[3] the claimant has been given the empty remedy of an "alternative" exercise program which his own doctors do not want him to use.
In conclusion, we feel that the deputy did not properly consider the inconsistencies in the depositional testimony of the non-treating, non-examining physicians and did not give enough emphasis to the treating physicians' familiarity with claimant's extensive and unusual injuries. The myriad of problems with which the claimant must cope lead to the conclusion that the rehabilitation program prescribed by Doctors Bingham and Moreau is medically necessary. We reverse the order appealed and remand for the entry of an order requiring payment by the employer of reasonable costs for installation and maintenance of a in-ground pool with handicap facilities or requiring the employer to provide claimant with daily access to such a pool within a reasonable distance from claimant's home along with reimbursement for transportation expenses.
BOOTH, J., concurs.
PEARSON, TILLMAN (Retired), Associate Judge, dissents without opinion.
NOTES
[1] Dr. Shea did not suggest an alternative for lower extremity exercise, and Dr. Kurth's recommendations did not offer cardiovascular solutions. Neither suggested skin conditioning treatment, which they recognized more properly in Dr. Bingham's field of expertise.
[2] With regard to Dr. Kurth's suggestion that claimant walk on his protheses regularly and do weightlifting exercises with his stumps, both of these activities would entail friction to a grafted or scarred area which the treating doctors thought to be inadvisable. Dr. Shea's exercise alternatives also included such friction-producing exercises. In addition, Dr. Shea's recommendations should generally be regarded as suspect considering his apparent lack of knowledge of claimant's skin condition and of the progress claimant had made in his current rehabilitation program.
[3] See, e.g. Swift & Company v. Kesler, IRC Order 2-3102 (1977), cert. denied 354 So.2d 982 (Fla. 1977); Wackenhut Corp. v. Ellis, IRC Order 2-3402 (1978), cert. denied 376 So.2d 71 (Fla. 1979).