597 So.2d 392 (1992)
STANDARD BLASTING & COATING and Claims Center, Appellants,
v.
David J. HAYMAN, Appellee.
No. 91-1799.
District Court of Appeal of Florida, First District.
April 17, 1992.
B.C. Pyle, B.C. Pyle, P.A., Orlando, for appellants.
Susan W. Fox, MacFarlane, Ferguson, Allison & Kelly, Tampa, and H. Guy Smith, H. Guy Smith, P.A., Lakeland, for appellee.
SHIVERS, Judge.
This appeal is from a workers' compensation order denying a motion to reduce attendant care benefits. We reverse.
David Hayman suffered a compensable injury on January 30, 1984, when he inhaled a large amount of toxic spray paint at work. Hayman's wife was awarded attendant care benefits  $5.25 per hour, eighteen hours a day, seven days a week. The award was appealed and affirmed in Standard Blasting & Coating v. Hayman, 476 So.2d 1385 (Fla. 1st DCA 1985). The facts are set forth in the opinion as follows:
[After the injury, claimant] was hospitalized and his condition rapidly deteriorated. His treating physicians diagnosed substantial permanent brain damage.
Dr. McClane, claimant's psychiatrist, stated that claimant has an IQ of 50 and the intellectual function of a three-year-old. He feels that claimant needs `a responsible adult ... to minimize major external stresses and then to watch him to be sure he doesn't wander off and get into trouble or drive a car or get involved with fire or something like that.' He feels the best situation for claimant is supervision by his wife but recognized the negative effects this has on her. He recommended that claimant's mother and father assist her.
Dr. Malzone, a neurologist, also treated claimant and found him to be functioning at a very primitive level. He described claimant as dangerous and in need of support and monitoring 24 hours *393 per day. If it were not for the assistance of his wife, claimant would have to be institutionalized.
Claimant's wife testified that he can dress himself (if she lays out his clothes) and feed himself (if she puts food in front of him). She shaves him and bathes him and helps him with toilet chores. She monitors his medication and makes sure he takes it. She observes him to make sure he does not hurt himself (he had burned himself and cut himself after returning home). She testified that he sleeps approximately 6 hours per night.
Id. at 1386. Because Mr. Hayman sleeps 6 hours per night, the JCC awarded attendant care benefits for 18 hours per day instead of 24. Mrs. Hayman was not employed prior to the accident.
Effective October 1, 1988, subsection (2)(e) was added to section 440.13, Florida Statutes. It states in part, "The value of nonprofessional attendant or custodial care provided by a family member shall be determined as follows: 1. If the family member is not employed, the per hour value shall be that of the federal minimum wage." Ch. 88-372, § 1, Laws of Fla.
Effective October 1, 1989, the following sentence was added to section 440.13(2)(e)(2), Florida Statutes: "In no event shall a family member providing nonprofessional attendant or custodial care pursuant to this paragraph be compensated for more than 12 hours per day." Ch. 89-289, § 10, Laws of Fla.
In 1990 this court determined that the 1989 amendment to section 440.13(2)(e)(2) does not affect a claimant's substantive rights, and therefore "the amendment applies to attendant care benefits awarded pursuant to the preamendment order where services are both rendered and paid for after the amendment's effective date." Mr. C's TV Rental v. Murray, 559 So.2d 452, 453 (Fla. 1st DCA 1990).
Relying on Mr. C's TV Rental, the employer and its workers' compensation insurance servicing agent (e/sa) filed a motion for "an order authorizing the reduction of the amount of hours and the hourly rate payable to the wife of David Hayman for attendant care currently being rendered to claimant."
A hearing was conducted on February 28, 1991. At the outset of the hearing, counsel for the e/sa explained, "We did not and do not intend to try to reduce the level of care to be provided to the claimant below that which was ordered for him, but only to reduce the amount to be provided by the wife. We have no objections [to] providing it by other outside sources." Hayman's position was that "the level of care that the wife is providing is not properly characterized as nonprofessional attendant care."
Joanne Weiss testified she is a nurse administrator with Upjohn Health Care, which provides nursing services. She has been a nurse for thirty years. She has visited the Haymans' home three times since 1984, once recently. Weiss was asked if Mrs. Hayman provided a professional level of care. She answered, "yes, sir. It is a trained level of care." The pay rate for that level of care is $5.85 per hour. Mrs. Hayman is not licensed, and her only training is from experience with her husband over the years since the accident. Weiss also testified by deposition that the duties performed by Mrs. Hayman are a mix of some of the duties performed by licensed practical nurses and home health aides.
Winnie Hayman testified she has been married to Mr. Hayman since 1972. She said Mr. Hayman still requires constant monitoring and supervision. Mrs. Hayman explained that she gives Mr. Hayman a variety of medicines in different combinations six times a day. When asked whether she ever worked as a professional or trained nurse or a home care attendant, Mrs. Hayman answered no.
Dr. Thomas McClane testified by deposition as an expert witness in psychiatry, as he did in the 1984 hearing on Hayman's original claim for benefits. He said Hayman's condition now is practically unchanged since 1984, and without the care provided by Mrs. Hayman, Mr. Hayman *394 would most likely need to be institutionalized. Mr. Hayman is like a small child.
The JCC denied the e/sa's motion for a reduction of the amount of hours and the hourly rate payable to Mrs. Hayman. The order states that section 440.13(2)(e) does not apply to Mrs. Hayman because she "is rendering trained professional attendant care of a level greater than that of an average nurse's aide." The JCC relied on Weiss's testimony and the definition of `professional' found in Webster's Dictionary: (A) engaged in specific activity as a means of livelihood: career, (B) possessing great skill or experience in a field or activity, and (C) one with assured competence in their field.
The e/sa argue that a `profession' is something one does for a living, requiring specialized skills and learning. They emphasize that Mrs. Hayman cannot be a professional because she has never been licensed or trained as an attendant.
We conclude that Mrs. Hayman is a non-professional. Therefore, Mr. C's TV Rental applies and payment for her attendant care services is limited by subsection 440.13(2)(h), Florida Statutes (1991) (formerly subsection (2)(g) in 1990 and (2)(e) in 1989).
REVERSED and REMANDED for further proceedings consistent herewith.
WOLF and WEBSTER, JJ., concur.