645 So.2d 1072 (1994)
KRAFT DAIRY GROUP and FLorida Insurance Guaranty Association, Appellants,
v.
Abraham COHEN, Appellee.
No. 93-2341.
District Court of Appeal of Florida, First District.
November 22, 1994.
Rehearing Denied December 30, 1994.
*1073 Patricia Altonaga, Marlow, Connell, Valerius, Abrams, Lowe & Adler, Miami, for appellants.
Joe N. Unger and Brumer, Cohen, Logan, Kandell & Kaufman, Miami, for appellee.
SMITH, Senior Judge.
The Employer/Carrier (E/C) appeal an order of the Judge of Compensation Claims (JCC) requiring that the E/C increase the hourly rate paid to Claimant's wife for attendant care services, pay for the installation of a swimming pool at Claimant's home, and purchase a modified van for Claimant to use for transportation. We affirm the JCC's order as to the attendant care benefits. However, we reverse the award of a home swimming pool, and remand for further proceedings, and reverse the van award.
Claimant was injured in a compensable accident on March 30, 1979 and was accepted by the E/C as permanently totally disabled on May 16, 1981. On September 25, 1992, Claimant requested various benefits, including an increase in the hourly rate of attendant care services, installation of a swimming pool at his home, and a specially modified van.
Sometime after Claimant's accident, his wife, Sally Cohen, left her job as a Certified Nursing Assistant (CNA) to care for her husband. The E/C began paying her $5 per hour for sixteen hours each day to provide Claimant with attendant care services. Mrs. Cohen's former employer paid her $5.90 per hour, and in addition, paid for her to attend nursing courses at Nova University in the afternoon. Mrs. Cohen did not know the value of her educational expenses, but speculated that it was between $10,000 and $12,000 a year. The record reflects that the going rate in the community for CNAs is between $11 and $15 per hour. Mrs. Cohen now cares for Claimant, helping him with all of his daily needs. The evidence shows that Mrs. Cohen assists Claimant with dressing, bathing, feeding himself, washing, combing his hair, and putting on his shoes. She also helps him with walking, exercises, physical therapy, swimming, puzzles, and washing and waxing the car.
Both parties agree that Claimant needs hydrotherapy. For eight years Claimant received this therapy at a public pool near his home. However, Claimant stopped swimming at that pool after he was knocked down and injured several times by school children. After Claimant requested the construction of *1074 a pool at his home, the E/C authorized the use of a pool at a health spa, the Bally's Scandinavian. Mrs. Cohen testified that it was not acceptable, however, because it is 17 miles from their home and is not covered. The E/C also suggested that Claimant use the pool at Pinecrest Rehabilitation Hospital, which is seven miles from Claimant's home, but it was rejected as being too small and shallow. Thus, Claimant secured an estimate for a 16' X 32' covered, heated home pool priced at $22,346.
Claimant also requested that the E/C provide him with a van because he was having difficulty getting in and out of a car. Claimant traded in both family cars and purchased a van in 1990, but it currently has 70,000 miles on it and is not holding up well. In lieu of a new van, the E/C offered Claimant the services of five van transportation companies to take him to therapy and doctor's visits.
Hearings were held on this matter on February 26 and April 26, 1993. The JCC ordered the E/C to pay Mrs. Cohen $10 per hour, sixteen hours per day, seven days a week for nursing services; install a swimming pool at Claimant's residence in accordance with an estimate submitted by Claimant; and purchase a new van for Claimant that includes any necessary modifications. The judge based his determination that Mrs. Cohen was entitled to $10 per hour on two facts: (1) Mrs. Cohen is a Certified Nursing Assistant and therefore not covered by section 440.13(2)(h),[1] and the going rate for CNAs is between $10 and $13.95 per hour; and (2) this represents the amount Mrs. Cohen was earning at her former employment with HRS, where she received $5 per hour plus education benefits, which had "a value probably in excess of another $5.00 per hour." The JCC's award of the installation of a swimming pool at Claimant's residence was based upon his belief that both Claimant's treating physician and the evaluating physician testified that it would be too dangerous for Claimant to use a public pool. The JCC also based his award of a new van on the testimony of both physicians, who testified that transportation in a van was medically necessary.
On appeal, the E/C argue that the increase in the rate of attendant care benefits violates section 440.13(2)(h)2, Florida Statutes. They also argue that the JCC erred in awarding Claimant a home swimming pool instead of membership in and transportation to a pool within a reasonable distance from Claimant's home. Finally, the E/C appeal the JCC's award of a modified van rather than access to the van transportation services it offered.
We will address each issue in turn. Turning first to the JCC's award of $10 per hour for attendant care services, it is clear that if Mrs. Cohen was not a Certified Nursing Assistant, section 440.13(2)(h)2 would apply to this award even though Claimant's injury took place before the statute's effective date of October 1, 1988. Mr. C's TV Rental v. David Murray, 559 So.2d 452 (Fla. 1st DCA 1990) (the 1988 amendment prescribing the value of the attendant or custodial care provided by a family member does not affect substantive rights); City of North Miami v. Towers, 557 So.2d 112 (Fla. 1st DCA 1990) (hourly value assigned to the care provided by claimant's wife should not exceed that prescribed by section 440.13(2)(e)2 (now 440.13(2)(h)2)).
Under section 440.13(2)(h)2, Mrs. Cohen would be paid the amount she received at her former employment. However, the JCC found this section inapplicable to Mrs. Cohen because she is a "professional, qualified, licensed and certified nursing assistant with a nursing background." No Florida *1075 court has addressed the question of whether Mrs. Cohen falls outside the ambit of section 440.13(2)(h)2 merely because she is a CNA. The E/C argues that the statute applies here because Mrs. Cohen is providing Claimant with nonprofessional care. According to the E/C, the issue is not whether Mrs. Cohen is a professional, but whether she has specialized training and experience in the particular services she is performing and whether the quality of care she is providing may be classified as professional. Since Mrs. Cohen's testimony indicates that she taught herself how to perform some of the services she provides for Claimant, the E/C views these services as nonprofessional.
There is some support for the E/C's argument. The statute regulates the value of "nonprofessional ... care provided by a family member." Thus, it would seem that one must look to the types of services performed rather than the qualifications of the caregiver performing them in determining whether the statute covers any particular situation. Mrs. Cohen assists Claimant with dressing, bathing, feeding himself, washing, combing his hair, and putting on his shoes. She also helps him with walking, exercises, physical therapy, swimming, puzzles, and washing and waxing the car. These types of services have been classified as services that go beyond ordinary household duties and constitute attendant care within the meaning of section 440.13(2)(a). Marlowe v. Dogs Only Grooming, 589 So.2d 990, 994 (Fla. 1st DCA 1991) ("Examples of extraordinary services that can constitute `attendant care' are bathing, dressing, administering medication, and assisting with sanitary functions."); Rodriguez v. Howard Industries, 588 So.2d 646, 650 (Fla. 1st DCA 1991) (attendant care services have been defined as bathing, administering medication, and assisting with sanitary functions); Don Harris Plumbing Co. v. Henderson, 454 So.2d 745 (Fla. 1st DCA 1984).
However, there is competent, substantial evidence to support the JCC's finding that Claimant needs care provided by someone with a medical background. In Standard Blasting & Coating v. Hayman, 597 So.2d 392 (Fla. 1st DCA 1992), this Court reversed the JCC's order rejecting the E/C's request for reduction of the amount of hours and the hourly rate paid to the claimant's wife because the wife was "rendering trained professional attendant care of a level greater than that of an average nurses's aide." In providing her husband with attendant care, Mrs. Hayman performed some duties that would be performed by licensed practical nurses and home health aides, but she testified that she had never worked as a professional or trained nurse or home care attendant. Id. at 393. The court concluded that because Mrs. Hayman was a nonprofessional, her rate should be limited to conform to section 440.13(2)(h). Id. at 394. The facts here are different, since Mrs. Cohen was a CNA, and as such, was clearly qualified to provide professional services.[2] Both Dr. Wancier, who was claimant's neurosurgeon for the past 15 years, and Dr. Lustgarten, claimant's neurologist, agreed that care by someone with a medical background and training was medically necessary; and Dr. Lustgarten testified that because of her education and training, Mrs. Cohen was the best person to provide care for the Claimant. We note that the JCC found that he could justify attendant care for twenty-four (24) hours per day in view of claimant's condition, but he limited his award to only sixteen (16) hours per day because Mrs. Cohen was willing to accept compensation for only sixteen (16) hours. Considered in the light of the record before us, it is clear that the JCC correctly found that Mrs. Cohen falls outside the ambit of section 440.13(2)(h)2, and that Hayman does not indicate a different result. Accordingly, we affirm the JCC's award of attendant care benefits at the rate of $10 per hour for sixteen hours each day.
*1076 Turning to the issue of whether the JCC properly awarded Claimant a home pool, we first note appellants' agreement that the record supports the JCC's conclusion that Claimant requires swimming therapy. Whether the record supports the award of a home pool, or one as large as the JCC awarded, is another matter. Requiring an E/C to pay for the installation of a pool at a claimant's home has been characterized as "highly extraordinary relief." Haga v. Clay Hyder Trucking Lines, 397 So.2d 428 (Fla. 1st DCA 1981), rev. denied, 402 So.2d 609 (Fla. 1981). Haga involved a claimant that had both legs amputated after suffering severe burns in a compensable accident. The E/C in Haga refused to construct a pool at claimant's home and offered instead membership in a health spa located 25 miles away that was only open three days a week. This Court reversed the order denying a home pool and remanded with instructions that the E/C either install the pool or provide claimant with daily access to a pool within a reasonable distance from his home. However, we stated that our decision should only apply to the unusual facts presented. Id. at 428-29.
This Court has affirmed orders requiring the E/C to provide claimant with a pool or to reimburse a claimant for construction of a home pool under unusual circumstances. Escambia County Bd. of County Comm'rs v. Phipps, 553 So.2d 269 (Fla. 1st DCA 1989) (order awarding the installation of a heated vinyl swimming pool at claimant's home should be affirmed because claimant has a need for hydrotherapy, the closest public pool is 30-40 miles from claimant's home and the trip tends to aggravate claimant's injury); Sacred Heart Hosp. v. Grafton, 451 So.2d 1018 (Fla. 1st DCA 1984) (evidence supported findings that swimming was the only form of exercise claimant could safely perform and that the closest pool to claimant's home was 56 miles away; thus, deputy's conclusion that claimant should be reimbursed for pool was proper under "restrictive standards enunciated ... in Haga"). Firestone Tire & Rubber Co. v. Vaughn, 381 So.2d 740 (Fla. 1st DCA 1980) (award of pool to claimant who had undergone twelve operations, who took daily pain medication, who used an electrode machine to combat pain, and who swam three to five times daily, including during the night when he could not sleep, should be affirmed based upon these highly unique circumstances).
Generally, when a claimant demonstrates that hydrotherapy is medically necessary and requests a backyard pool, the E/C must either grant the request or provide claimant with access to a viable alternative. Kubber v. Max Davis Assocs. & FEISCO, 603 So.2d 137 (Fla. 1st DCA 1992). Here, the E/C has suggested at least two alternatives to a backyard pool. Pinecrest Rehabilitation Hospital, located seven miles from Claimant's home, has an indoor, heated pool available for therapy sessions and it is used exclusively to provide therapy to disabled persons. The E/C also offered Claimant access to the pools at Bally's Scandinavian, which is between 13 and 17 miles from his home.[3] Bally's has two outdoor, heated pools and Mrs. Cohen testified that the pool was not crowded when they visited it.
The JCC's award of a home pool was based upon his finding that it is too dangerous for Claimant to swim in a public pool. Although Dr. Wancier, Claimant's treating physician, testified that Claimant would be harmed if he was hit at a public pool, he gave the following response to a question asking whether a pool at Claimant's home was reasonably and medically necessary: "A pool is not absolute medical necessity [sic] in my opinion. If there is a way to facilitate transportation to go to a proper facility, I think that's appropriate." Upon cross-examination, Dr. Wancier said that a backyard pool would be convenient, but reiterated that a public pool would be fine if it is feasible and if proper transportation exists. Dr. Lustgarten, the evaluating physician, also testified that Claimant did not need a pool at his home "as long as he had access to a pool." "I think if you were to provide a pool available *1077 to him seven days a week, and preferably heated, that would be satisfactory." Dr. Lustgarten also agreed that a pool within a 10 to 15 minute drive from Claimant's home would be fine. Based upon the doctors' testimony, we think it was error for the JCC to rule out claimant's use of a public pool.
There was no medical evidence that the Pinecrest pool would not be satisfactory for the Claimant's needs. Although Mrs. Cohen testified that the Pinecrest Pool was not large enough or deep enough to meet the needs of her husband,[4] the JCC did not rely upon this evidence in making his award, but instead, based his decision on the perceived dangers involved in using a "public" pool. Notwithstanding our disagreement with the JCC's decision with regard to public pools, there may be another basis upon which the award of a pool may be affirmed, as we will explain below.
Our examination of the record with respect to the adequacy of the Pinecrest pool, which includes several photographs of the pool, leads us to conclude that Mrs. Cohen's concerns may well be justified. The photographs indicate that the pool may not actually be a "swimming" pool in the usual sense of the term,[5] but (as argued by counsel below) is more in the nature of a therapeutic pool in which the patient simply sits partially immersed in water. In fact, the photographs show that a substantial portion of water in the pool is occupied by a stairway with handrails, and several underwater chairs, indicating that the pool is designed for use by several persons at the same time. In our view, it may be possible for the JCC to find, based upon the evidence of record or supplementarily available,[6] that the Pinecrest pool is not adequate for the claimant's needs, and that there is no other adequate pool within a reasonable distance from the claimant's home. Since it is not our function to search the record and weigh the evidence, we are compelled to remand this issue to the JCC for further consideration and additional findings which may include, in the JCC's discretion, the receipt of supplemental evidence.
Coming now to the last issue, we find no CSE to support the judge's order that Claimant needs a new van rather than access to a van service. Although Dr. Wancier testified that a van is reasonably and medically necessary, he also testified that it would be medically sufficient for the E/C to provide Claimant with a van to transport him to therapy and to the doctor's office without giving him ownership of it. In addition, Dr. Lustgarten testified that a van service would be sufficient to meet Claimant's needs.
Two subsections in section 440.13 address a claimant's entitlement to transportation costs. Vehicles may constitute "other apparatus" under section 440.13(1), which requires the employer to furnish "remedial treatment, care and attendance ..., including medicines, crutches, artificial members and other apparatus." § 440.13(1), Fla. Stat. (Supp. 1978). Section 440.13(4), Florida Statutes (Supp. 1978), also provides:
An injured employee is entitled, as a part of his remedial treatment, care, and attendance, to reasonable actual cost of transportation to and from the doctor's office, hospital, or other place of treatment by the most economical means of transportation available and suitable in the individual case. When the employee is entitled to such reimbursement for transportation by private automobile, it shall be presumed, in the absence of proof, that the actual cost is the amount allowed by the state to employees for official travel.
A claimant's need for a van must be "clearly established." Aino's Custom Slip Covers v. DeLucia, 533 So.2d 862, 865 (Fla. 1st DCA 1988) (awarding a van merely for *1078 the convenience of the claimant is not proper). The test for whether a van may be awarded as "other apparatus" under subsection (1) is "whether the award would improve the condition caused by the accident or would aid in the recovery from the accident." Brown v. Steego Auto Parts, 585 So.2d 401, 403 (Fla. 1st DCA 1991). This test was applied in Temps & Company Services v. Cremeens, 597 So.2d 394 (Fla. 1st DCA 1992), where this Court held that although the claimant was entitled to the apparatus necessary to enable her to drive without the fingers she had amputated as a result of her industrial accident, she was not entitled to a replacement vehicle.
Here, the evidence demonstrates that van transportation is medically necessary because of Claimant's increased spasticity, which requires more height and room than a regular car provides. However, although both doctors testified that a van would be beneficial for Claimant's "mental hygiene" and well-being, both agreed that a van service would be sufficient to meet Claimant's medical needs. Accordingly, the evidence does not support the award of a new van purchased by the E/C. "Supportive services such as driving the claimant to the store and to other places, other than transportation necessary for medical treatment pursuant to section 440.13(6), constitute quality of life activities indemnified under disability compensation benefits rather than attendant care service that is medically necessary." Marlowe v. Dogs Only Grooming, 589 So.2d 990 (Fla. 1st DCA 1991). In Timothy Bowser Construction Co. v. Kowalski, 605 So.2d 885 (Fla. 1st DCA 1992), the claimant's physician testified that it was medically necessary for the claimant to engage in the types of activities a man of his age normally would, including social outings. This Court reversed this portion of the transportation award because it was based on providing claimant with quality of life activities covered by the compensation benefits. Id. at 887. This same logic dictates that the award of a new van to Claimant be reversed.
There is competent, substantial evidence to support the provision of transportation for Claimant under the plain language of section 440.13(5), which provides that transportation should be provided under the "most economical means available." Therefore, we remand this cause to the JCC to order the furnishing of van service as the most economical means of transportation available to Mr. Cohen.
For the foregoing reasons, the JCC's order is AFFIRMED as to the number of hours and the increase in the hourly rate paid for attendant care benefits; is REVERSED as to the van, and is REVERSED and REMANDED as to the pool award.
ERVIN and LAWRENCE, JJ., concur.
NOTES
[1] Section 440.13(2)(h), Florida Statutes (1993), provides:

(h) The value of nonprofessional attendant or custodial care provided by a family member shall be determined as follows:
1. If the family member is not employed, the per hour value shall be that of the federal minimum wage.
2. If the family member is employed and elects to leave that employment to provide attendant or custodial care, the per hour value of that care shall be at the per hour value of such family member's former employment, not to exceed the per hour value of such care available in the community at large. In no event shall a family member or a combination of family members providing nonprofessional attendant or custodial care pursuant to this paragraph be compensated for more than a total of 12 hours per day.
[2] The argument that the compensation payable to Mrs. Cohen is not restricted by the statute because she is a CNA is also somewhat bolstered by a note in Farm v. Ferrell, 458 So.2d 1147 (Fla. 1st DCA 1984), where the court noted that appellee argued persuasively that it may be discriminatory to presume that after the claimant's nurse married him she performed merely gratuitous services normally performed by a spouse rather than professional services. The court stated: "If services are needed, it would be discriminatory to pay a nurse's aide who lived in, but not pay a nurse due to the mere fact of marriage."
[3] The Bally pool may not be within the driving time of 10 to 15 minutes specified by the doctors as suitable. In addition, the Bally pool is not covered, and thus does not meet one of the criteria specified by Dr. Lustgarten.
[4] Over objections on grounds of hearsay and competency of the witness, Mrs. Cohen was allowed to testify that the Pinecrest pool was a 12' X 16' hydrotherapeutic pool that could not be used for the claimant's exercises. She explained that the pool was too shallow for the way he had to swim, since his feet would be dragging along the floor. She stated that the claimant needed deeper water that would allow him to exercise both his upper and lower body, and that he needed a greater length to swim.
[5] The JCC specifically found the need for a "swimming" pool.
[6] Cf. Cooper v. Waverly Growers Co-operative, 216 So.2d 196, 198 (Fla. 1968).