**Robert and Brenda GOLDMAN, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 2:97–CV–37–WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

Oct. 21, 1998.

Affirmed, 196 F.3d 1262.

Edgar B. Dunlap, II, John A. Gram, Whelchel & Dunlap, Gainesville, GA, for Robert Goldman, Brenda Borton Goldman, plaintiffs.

James Randolph Schulz, Office of United States Attorney, Atlanta, Brian P. Kaufman, phv-DOJ, U.S. Department of Justice, Washington, DC, for USA, defendants.

## ORDER

O'KELLEY, Senior District Judge.

This case is before the court for consideration of the parties' cross motions for summary judgment [8–1][9–1]. After careful consideration, this court denies plaintiffs' motion and grants defendant's motion for the reasons stated herein.

## FACTUAL BACKGROUND[1]

On June 29, 1989, while attending a business meeting at the Clover Leaf Bowling Lane in Miami, Florida, plaintiff Robert Goldman fell and injured himself. Mr. Goldman was employed by Warren Henry Motors, Inc. as a car salesman at the time of the accident and was attending a weekly sales meeting held at the bowling alley when he slipped on the wet floor and suffered his injuries. As a result, Mr. Goldman became permanently disabled and has been unable to return to work.

At the time of Mr. Goldman's injuries, plaintiff Brenda Borton Goldman, Mr. Goldman's wife, worked approximately forty hours a week as a bookkeeper for two

doctors and a hand rehabilitation company. Mrs. Goldman continued working until April 24, 1990 when she began to take care of her husband on a full-time basis, providing the equivalent of full-time nursing services. Mrs. Goldman had no formal medical or nursing training before she began to care for her husband. Initially, Mrs. Goldman provided Mr. Goldman with complete physical maintenance support, assisting him with bathing, shaving, dressing, eating, walking, and all other activities. As Mr. Goldman's condition improved through treatment and rehabilitation, Mr. Goldman's needs decreased. However, Mrs. Goldman continued to provide significant physical support to Mr. Goldman through the end of 1993, the year at issue in this litigation.

In addition, Mrs. Goldman acted as the intermediary between Mr. Goldman and his doctors, coordinating his various surgeries, rehabilitation treatments, and doctors visits. She discussed his medication with his physicians and administered all of his medication. Mrs. Goldman also provided full domestic support for her husband, doing substantially all of the cooking, cleaning, shopping, and other household duties. She handled all of their financial affairs during this time period.

On November 18, 1991, Mr. Goldman filed a worker's compensation claim for attendant care benefits under section 440.13 of the Florida Statutes. The claim was for reimbursement for attendant care benefits provided by Mrs. Goldman to Mr. Goldman from April 24, 1990 forward. On December 18, 1992, Mr. Goldman entered into a Straight Stipulation with the insurance carrier, the Florida Retail Federal Self Insurers Fund (FRFSIF), to settle his claim. The stipulation provided that Mr. Goldman would be "compensated at a rate of $6.50 per hour for twelve hours per day for the custodial care rendered by his wife,

---

1. The court relies on the parties' Joint Stipulation as to Facts and Documents [7–2] in outlining the material facts.

plaintiff Brenda Borton, for so long as it was medically necessary."

Pursuant to the stipulation, FRFSIF was required to pay Mr. Goldman directly for the attendant care services provided by his wife. The payments were to be made by check payable to Mr. Goldman, but the checks were to indicate that the payments represented compensation for services rendered by Mrs. Goldman. *See* Order of November 29, 1994 from the Judge of Compensation Claims for the State of Florida.

Accordingly, the Claims Center for the FRFSIF issued a check to Mr. Goldman for $73,347 on December 17, 1992 for attendant care services rendered by Mrs. Goldman. This check was deposited by Mr. Goldman on January 14, 1993 into a joint account to which both he and Mrs. Goldman had complete access. Mr. and Mrs. Goldman made joint decisions as to how these funds would be utilized. During the calendar year 1993, the Claims Center issued additional checks to Mr. Goldman totaling $28,965 for attendant care services rendered during that year. These checks were deposited in the same account as the previous payments. A portion of these funds was later utilized to pay the taxes in issue and on May 9, 1995, the balance of the funds was invested in a certificate of deposit in the name of Robert Goldman. At the time the certificate of deposit matured in November of 1996, the funds were reinvested in a savings account in the name of Robert Goldman, where such funds now remain.

Based on the payments made to Mr. Goldman for Mrs. Goldman's services, the Claims Center issued Mrs. Goldman a Form 1099–MISC showing $102,312 in medical and health care payments to her for the taxable year 1993. Accordingly, plaintiffs attached a Schedule C to their joint 1993 federal income tax return, stating that Mrs. Goldman was employed in the business of nursing. The Schedule C listed gross receipts or sales for Mrs. Goldman in the amount of $102,337, representing the total amount paid to Mr. Gold-

man by the Claims Center. As a result, the Goldmans showed $102,337 in income on their joint return which resulted in an income tax obligation of $22,436 and a self-employment tax obligation of $9883. The Goldmans timely filed the return and paid the tax on April 18, 1994.

On October 2, 1995, plaintiffs filed a form 1040X amended federal income tax return for the taxable year 1993. On this amended return, the plaintiffs claimed a refund of the $22,436 in income tax and $9883 in self-employment tax they paid with respect to their original return. The plaintiffs claimed that they were due a refund of all the tax they paid because the $102,337 in payments that Mr. Goldman received for services provided by Mrs. Goldman should have been treated as nontaxable worker's compensation payments to him rather than taxable self-employment income to Mrs. Goldman. The Internal Revenue Service denied the Goldmans' refund claim.

On or about January 1, 1997, at the request of the plaintiffs, the FRFSIF reissued a corrected Form 1099–MISC to Mrs. Goldman for the taxable year 1993. On this form, no amount was listed for medical and health care payments to Mrs. Goldman. At the same time, the FRFSIF issued Mr. Goldman a corrected Form 1099–MISC listing medical and health care payments to him of $102,337.

After exhausting all administrative remedies, the Goldmans filed the instant action for a refund in the amount of $32,319. By consent, the parties agreed that the Goldmans made an overpayment of self-employment tax for the taxable year 1993 in the amount of $9883. Consent Judgment, February 26, 1998. The case was closed on February 26, 1998 and reopened on July 20, 1998.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *See, e.g., Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied,* 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples,* 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The materiality of facts is governed by the relevant substantive law in the case. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party: the non-moving party still bears the burden of coming forth with sufficient evidence on *each element* that must be proved. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. In

*Earley,* the Eleventh Circuit further emphasized:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff .... Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case .... In such circumstances, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial .... If the evidence is *merely Coorabie,* or is *not significantly probative,* summary judgment may be granted.

*Id.* (emphasis in original) (citations omitted).

## DISCUSSION

Plaintiffs and defendant have filed cross motions for summary judgment on plaintiffs' claim of a refund for $22,436 in federal income taxes paid for the year 1993.[2] Because the motions require the same analysis, this court will consider both motions concurrently.

Plaintiffs assert that a refund is warranted because an award for attendant care benefits under the State of Florida's worker's compensation statute is appropriately characterized as a worker's compensation award. Section 104(a)(1) of the Internal Revenue Code ("I.R.C.") excludes worker's compensation awards for personal injuries or sickness from gross income. In contrast, defendant argues, in part, that the payments received by Mr. Goldman during the taxable year 1993 for attendant care services provided to him by Mrs. Goldman were taxable to Mrs. Goldman as payment for services rendered under the anticipatory assignment of income doctrine.

---

**2.** The $9883 in overpayment of self-employment tax for the taxable year 1993 is no longer in contention. Consent Judgment, February 26, 1998.

■ After careful consideration, this court agrees with the defendant and finds that an award of attendant care services for care given by Mrs. Goldman is properly included in gross income as compensation for services rendered under the doctrine of anticipatory assignment. The worker's compensation award exclusion does not apply. The Internal Revenue Code broadly defines the term "gross income" as "all income from whatever source derived." I.R.C. § 61(a). Accordingly, courts are hesitant to extend exclusions beyond their plain meaning. *Helvering v. American Dental Co.*, 318 U.S. 322, 329–30, 63 S.Ct. 577, 87 L.Ed. 785 (1943); *see Taggi v. United States*, 35 F.3d 93, 95 (2d Cir.1994); *Ireland v. United States*, 621 F.2d, 731, 734 (5th Cir.1980). One source for gross income is "compensation for services, including fees, commissions, fringe benefits, and similar items." I.R.C. § 61(a)(1).

Section 104(a)(1) of the Internal Revenue Code excludes "amounts received under workmen's compensation acts as compensation for personal injuries or sickness" from gross income. The worker's compensation exclusion "has been strictly construed to comport with the general rule that all income is taxable unless it is specifically excluded." *Craft v. United States*, 879 F.Supp. 925, 930 (S.D.Ind.1995). "A taxpayer has the burden of proving entitlement to the § 104(a) exclusion." *Stanley v. United States*, 140 F.3d 890, 891 (10th Cir.1998).

The Florida worker's compensation statute in force during the period in question required an employer to provide professional or nonprofessional custodial care when the nature of the worker's injury required it. Fla Stat. Ann. § 440.13(f) (West 1991). "Family members may not be paid for such care unless prescribed by a physician and may only be compensated for such services which go beyond the scope of household duties performed gratuitously by a family member." *Id.* The section also provides guidelines for determining the value of services rendered by a family member. § 440.13(g).

Based on the general principles underlying the Internal Revenue Code, the language of the Florida provision, and the Florida courts' actions pursuant to the statute, this court finds that the payments for attendant care services are properly attributable to services rendered by Mrs. Goldman despite the designation of Mr. Goldman as recipient of the payments. Because no cases address the specific issue of whether an attendant care benefit award pursuant to a worker's compensation statute is excluded under the Internal Revenue Code, this court reverts to the general rule of construing such exclusions narrowly. Accordingly, this court notes that § 104(a)(1) does not exclude all amounts received under worker's compensation acts from gross income. Instead, only amounts received as "compensation for personal injuries or sickness" are excludable. I.R.C. § 104(a)(1). Although the need for the attendant care services was triggered by Mr. Goldman's injury, the payments in question were attributed to these services, not to Mr. Goldman's personal injuries.

Furthermore, section 440.13(f) of the Florida Statutes indicates that compensation is earned by the caregiving family member, stating that family members may only be compensated under certain conditions. Some Florida courts have also ordered payments directly to the family member. *See Kraft Dairy Group v. Cohen*, 645 So.2d 1072, 1074 (Fla.Dist.Ct.App.1994); *Standard Blasting & Coating v. Hayman*, 597 So.2d 392 (Fla.Dist.Ct.App.1992); *Howard Johnsons v. Pineda*, 560 So.2d 336, 337 (Fla.Dist.Ct.App.1990).

In addition, the way that the plaintiffs and the insurance carrier, FRFSIF, structured the payments suggests that the payments were to compensate Mrs. Goldman for services rendered. Pursuant to a stipulation, the checks to pay for the attendant care services were made payable to Mr. Goldman but they were to indicate that the payments represented compensation for services rendered by Mrs. Goldman. Moreover, the insurance carrier, FRFSIF,

issued a Form 1099–MISC showing $102,-312 in medical and health care payments to Mrs. Goldman for the taxable year 1993. It was only upon plaintiffs' request that the FRFSIF issued corrected Forms 1099–MISC, shifting the payments from Mrs. Goldman to Mr. Goldman.

 Furthermore, this court finds that the issuance of the checks to Mr. Goldman for services rendered by Mrs. Goldman constitutes an anticipatory assignment of income. It is well-settled that a taxpayer cannot avoid the payment of income taxes by assigning income to another person before it is received by the taxpayer. *Lucas v. Earl*, 281 U.S. 111, 114–15, 50 S.Ct. 241, 74 L.Ed. 731 (1930); *United States v. Basye*, 410 U.S. 441, 450, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1972); *Blohm v. Commissioner of Internal Revenue*, 994 F.2d 1542, 1549 (11th Cir.1993). "Under *Lucas v. Earl*, an assignment of income to be earned or to accrue in the future, even though authorized by state law and irrevocable in nature, is ineffective to render the income immune from taxation as that of the assignor." *Commissioner of Internal Revenue v. Harmon*, 323 U.S. 44, 46, 65 S.Ct. 103, 89 L.Ed. 60 (1944).

In *Lucas,* the taxpayer and his wife agreed by contract that any income earned by either of them during the course of their marriage was to received by them as joint tenants. The Court rejected the taxpayer's claim that he should only be taxed on one-half of his income. Similarly, this court rejects plaintiffs' contention that Mrs. Goldman can escape tax liability by persuading the insurance carrier to issue the checks to Mr. Goldman and subsequently recharacterizing the payments as a worker's compensation award for personal injuries or sickness. Despite approval by the Florida Judge of Compensation Claims of this plan, this assignment of income was ineffective for federal income tax purposes.

Accordingly, plaintiffs' motion is DENIED [9–1] and defendant's motion for partial summary judgment is GRANTED [8–1]. Plaintiffs are not entitled to a refund of $22,436 in federal income taxes.

Plaintiffs' request for reasonable administrative costs and litigation costs is also DENIED. Because the Consent Judgment of February 26, 1998 disposes of the claim of $9883 based on the overpayment of self-employment tax, this order concludes the case. The clerk is DIRECTED to enter judgment for the defendant.