T.C. Memo. 1998-392


UNITED STATES TAX COURT


JAMES J. AND LINDA J. HARFORD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8436-97.                    Filed November 6, 1998.


James J. Harford, pro se.

<u>Linda A. Neal</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]

Respondent determined a deficiency of $5,457 in petitioners'
Federal income tax for 1994.

---

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

The sole issue for decision is whether $24,060.44 received by James J. Harford (petitioner husband) as a result of the termination of his employment is excludable from petitioners' 1994 gross income, pursuant to section 104(a)(2), as damages received on account of personal injury or sickness.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Durham, North Carolina.

Petitioner husband received a bachelor of science degree in electrical engineering from Georgia Tech University in 1984. That same year petitioner husband became employed by International Business Machines Corp. (IBM) in the company's Kingston, New York, facility. In 1987, petitioner husband moved to the Raleigh-Durham area of North Carolina and remained employed with IBM. Following his move to North Carolina, and concurrent with his continued employment with IBM, petitioner husband pursued and received a master's degree in computer science from the University of North Carolina.

During May 1994, the manager of petitioner husband's division at IBM (manager) became concerned about the delay in completing a development project that petitioner husband's division was working on. Consequently, the manager advised petitioner husband and the other members of his division that all

vacation would be canceled through the end of June 1994 in order for the project to be completed. Petitioner husband informed his manager that he would be unable to comply with the cancellation of vacation, as he was committed to attend a reunion of his extended family that had been planned and paid for several months prior thereto and had been previously approved by IBM management. Petitioner husband's manager warned him that, if he followed through with his vacation plans and failed to report for work as required, he would be dismissed due to insubordination. Petitioner husband defied the cancellation of leave and attended his family reunion, failing to report for work for a week during late May and early June.

When petitioner husband returned to work following his vacation, he was informed by his manager that he would not be dismissed; however, he was given two options regarding his employment with IBM. Petitioner husband was given the choice to either (1) submit a voluntary resignation from IBM and obtain the benefits provided in a severance package created by IBM for employees who resigned or retired as a result of corporate downsizing, or (2) remain employed with IBM but sustain a demotion in performance evaluation ranking, undergo a probationary period of 6 months, and engage in a significant amount of overtime work. Petitioner husband chose to voluntarily resign from IBM and accept the severance package.

Pursuant to the termination of his employment, petitioner husband received benefits under the "Networking Hardware Division and Networking Software Division Resource Transition Program" (NRTP) established by IBM to induce employees to resign or retire early under a plan of corporate downsizing. Under the NRTP, a participating employee was entitled to a lump-sum payment, temporary medical and dental insurance (which the employee could continue later at his or her own cost), and career transition services. The lump-sum payment was payable at the time of a participating employee's departure and was reduced by any advances or loans owed to IBM at the time of departure. If a participating employee resumed his employment with IBM within a specified period, a prorated amount of the lump-sum payment was required to be repaid.

In connection with his participation in NRTP, petitioner husband executed, on July 15, 1994, a document entitled "General Release and Covenant Not to Sue" (the Release) setting out the terms of his severance package. The Release stated:

> In exchange for the sums and benefits which you will receive pursuant to the terms of the * * * [NRTP] * * * [petitioner husband] agrees to release International Business Machines Corporation, its subsidiaries and affiliates, and its benefits plans, (hereinafter "IBM") from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those that are related to your employment with IBM, the termination of that employment, or other severance payments or your eligibility or participation in the Retirement Bridge

Leave of Absence, or any claims for attorneys' fees. You agree that this also releases from liability IBM's agents, directors, officers, employees, representatives, successors and assigns (hereinafter "those associated with IBM").

You agree that you have voluntarily executed this Release on your own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that you may have now or in the future. You also agree that this Release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal, state or local law dealing with discrimination in employment, including but not limited to discrimination based on sex, race, national origin, religion, disability, veteran status or age. You also agree that this Release includes claims based on theories of contract or tort whether based on common law or otherwise.

Petitioner husband was entitled to revoke his signature within 7 days of signing the Release; however, had he done so, he would have been required to return his lump-sum payment and would have become ineligible for the other NRTP benefits. Petitioner husband received a lump-sum payment of $24,060.44 in connection with his participation in NRTP. Petitioner husband suffered no injury or sickness at the time of his resignation. Neither prior nor subsequent to his resignation did petitioner husband file a complaint or claim with IBM or against IBM regarding any type of discrimination, personal injury, or wrongful termination.

On their 1994 Federal income tax return, petitioners failed to report as income the $24,060.44 received by petitioner husband

upon his termination of employment with IBM.[2] Petitioners attached to their return a Form 8275, Disclosure Statement, explaining that they had not included the subject $24,060.44 in their gross income for 1994 because they believed such payment was:

> not taxable under Section 104 of the Internal Revenue Code because the payment was made as a consideration to the taxpayer for his release of his employer for any claim he might have against his employer for age discrimination and other potential tort claims.

In the notice of deficiency, respondent determined that the subject $24,060.44 was includable in petitioners' gross income for 1994. This was the only adjustment in the notice of deficiency.

The sole issue is whether the $24,060.44 received by petitioner husband as a result of the termination of his employment with IBM is excludable from petitioners' 1994 gross income pursuant to section 104(a)(2) as damages received on account of personal injury or sickness. Except as otherwise provided, gross income includes "all income from whatever source derived". Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348

---

[2] IBM issued to petitioner husband a Form W-2, Wage and Tax Statement, for 1994 reflecting wages, tips, and other compensation of $64,432.30, which included the $24,060.44 paid to petitioner husband upon termination of his employment. Petitioners attached a copy of this Form W-2 to their 1994 return.

U.S. 426, 429-430 (1955).  Although section 61(a) is to be broadly construed, statutory exclusions from income must be narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995).

Section 104(a)(2) excludes from gross income "the amount of any damages * * * received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  Section 1.104-1(c), Income Tax Regs., provides that "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Thus, in order to exclude damages from gross income pursuant to section 104(a)(2), the taxpayer must prove: (1) The underlying cause of action is "based upon tort or tort type rights", and (2) the damages were received "on account of personal injuries or sickness."  Commissioner v. Schleier, supra at 336-337.

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable from gross income under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992).  The crucial question is "in lieu of what was the settlement amount paid."  Bagley v. Commissioner,

- 8 -

105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). Determining the nature of the claim is a factual inquiry. Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part, revd. in part, and remanded 70 F.3d 34 (5th Cir. 1995).

Petitioners have failed to demonstrate any personal injury or sickness suffered by petitioner husband. Although petitioners' arguments are not entirely clear from the record, the Court surmises petitioners' contention to be that, since petitioner husband signed the Release in exchange for the $24,060.44 payment, petitioner husband must have had some potential claim against IBM. Petitioners are mistaken. The execution of a general release against liability does not, in and of itself, confirm that the releasing party indeed possesses a bona fide cause of action against the party released.

The record does not show that petitioner husband had a potential claim of any kind against IBM, including that for personal injury, sickness, or wrongful termination. In point of fact, petitioner husband was not terminated but rather was given the option to remain with IBM on a probationary status for several months and be subject to some discipline for his direct defiance of a company mandate. Instead, petitioner husband chose to resign voluntarily from IBM and accept a severance package. Every indication in the record leads the Court to conclude that the termination of petitioner husband's employment with IBM was

purely voluntary and resulted directly from his own insubordination, and, had he complied with the company's cancellation of leave policy, he would have avoided a confrontation with his supervisor and ultimately the company. The lump-sum payment thus appears to be severance pay rather than a payment for personal injury, and severance pay, like the pay it replaces, is taxable as income. See Brennan v. Commissioner, T.C. Memo. 1997-317.

Even if the Court were to conclude that IBM paid petitioner husband the $24,060.44 in settlement of a possible claim for wrongful termination from IBM, the amount of lost wages received in such a situation is generally not linked to any personal injury, and, thus, such an award would not qualify for the exclusion from gross income provided in section 104(a)(2). Commissioner v. Schleier, supra at 330.

The Court recognizes that mental distress may suffice as a personal injury or sickness under the law applicable to the taxable year in issue, id. at 329 n.4; however, petitioners have failed to show that any inconvenience or stress experienced by petitioner husband as a result of his resignation from IBM constituted a personal injury or sickness. There is no evidence that petitioner husband's distress, if any, manifested itself as physical symptoms, required him to seek medical help, or incapacitated him in any manner.

Even if petitioner husband sustained personal injury or sickness, petitioners failed to show what portion, if any, of the $24,060.44 payment was allocable to tort or tort type claims. The Release contains broad language relieving IBM from liability for many potential claims, some of which are not based in tort or tort type rights, including contract claims, claims under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602, as amended 29 U.S.C. secs. 621-634 (1994), and claims under title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241, 253, as amended 42 U.S.C. secs. 2000e-1 to -17 (1994).  See, e.g., Commissioner v. Schleier, supra at 336 (holding that settlements for claims made under the ADEA are not based on tort or tort type rights for purposes of section 104(a)(2)); United States v. Burke, supra at 241 (holding awards of back wages under title VII do not redress tort type personal injury within the meaning of section 104(a)(2)).  The Release does not state that any portion of the amount petitioner husband received was for any specific potential tort or tort type claim against IBM.[3]  Thus, on this record, it would be impossible for

_____

[3]     Where a settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor.  Knuckles v. Commissioner, 349 F.2d 610, 612-613 (10th Cir. 1965), affg. T.C. Memo. 1964-33.  The Court is satisfied that it was not IBM's intent for any portion of the subject payment to be paid as a settlement of a tort or tort type claim on account of a personal injury or sickness.

the Court to determine a specific tort or tort type claim or claims that may have served as a basis for settlement, if any.  A failure to show the specific amount of the payment allocable to the claims of tort or tort type damages for personal injuries results in the entire amount being presumed not to be excludable. See Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. on this issue and revd. on other issues 913 F.2d 1486 (9th Cir. 1990).

The $24,060.44 settlement payment petitioner husband received from IBM in 1994 does not satisfy the requirements for exclusion of the payment under section 104(a)(2).  Consequently, on this record, the Court holds that such payment is includable in petitioners' gross income for that year.

Decision will be entered

for respondent.