T.C. Memo. 1999-323

UNITED STATES TAX COURT

JAMES W. TAYLOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15308-97.          Filed September 27, 1999.

James W. Taylor, pro se.

<u>Anne S. Daugharty</u>, for respondent.

MEMORANDUM OPINION

WOLFE, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax for 1993 in the
amount of $4,008 and an accuracy-related penalty under section
6662(a) in the amount of $797.  Unless otherwise indicated,
section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether a settlement payment that petitioner received from Central Washington University (CWU) is excludable from his gross income under section 104(a)(2); (2) whether petitioner has substantiated the nature and amount of various deductions he claimed on the Schedule C attached to his 1993 Federal income tax return; (3) whether petitioner is entitled to a casualty loss deduction; (4) whether petitioner is entitled to a deduction for charitable contributions in an amount greater than the amount determined by respondent; (5) whether petitioner is entitled to a deduction for unreimbursed employee business expenses; (6) whether petitioner is entitled to an individual retirement account (IRA) deduction; and (7) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

For purposes of convenience and clarity, we have combined the findings of fact and discussion of pertinent legal issues. Some of the facts were stipulated, and those facts are so found and are incorporated herein by reference. Petitioner resided in Yakima, Washington, at the time the petition was filed in this case.

1.  Payment From Central Washington University

Before December 8, 1992, petitioner was employed as a maintenance mechanic by CWU. During his employment with CWU, petitioner underwent an operation on his right shoulder for an injury unrelated to his employment. After the shoulder surgery, petitioner received medical advice that he should avoid lifting amounts greater than 50 pounds. On October 20, 1992, petitioner reinjured his right shoulder while at work. Petitioner contends that the reinjury resulted when CWU required him to use a 60-pound jackhammer. Petitioner did not return to work at CWU after reinjuring his shoulder.

During his employment with CWU, through the union, petitioner filed against CWU at least five separate grievances, including a grievance relating to his shoulder injury. Petitioner testified that the other four grievances relate to CWU's "unfair labor practices, like taking * * * [his] radio and making it unsafe for * * *[him] to work, or taking * * * [his] driving privileges so * * * [he] had to use a wheelbarrow." Petitioner further testified that CWU authorities "were harassing * * *[him] and * * *[that his] union representative asked * * * [him] to file grievances to remedy * * * [CWU's] unprofessional conduct."

On December 8, 1992, petitioner and CWU entered into a settlement agreement that petitioner "will through his Union

representative, withdraw all appeals and grievances."

Petitioner also agreed to the following:

>     all claims, demands, rights, causes of action, the
>     administrative remedies that [petitioner] has or may
>     have against [CWU], its successors and assigns, and
>     each and every one of the past or present employees,
>     students, agents, attorneys, or representatives of
>     [CWU], in their individual and official capacities
>     arising from or related to his employment are
>     satisfied, discharged and settled.

CWU agreed to pay petitioner $25,000, reduced by any compensation benefits (other than medical benefits) received as a result of his shoulder injury.  On account of his shoulder injury, petitioner received a benefit from the Washington State Department of Labor and Industries in the amount of $3,604.80, of which $2,926.80 represented a benefit for lost compensation and $678 represented medical benefits.  Accordingly, in March 1993, CWU paid petitioner $22,073.20.  Petitioner contends that the payment from CWU is excludable from gross income under section 104(a)(2).

Section 104(a)(2) excludes from gross income "the amount of any damages * * * received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness."  The term "damages * * * received (whether by suit or agreement * * *)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

See sec. 1.104-1(c), Income Tax Regs.  To exclude damages from gross income pursuant to section 104(a)(2), the taxpayer must prove:  (1) The underlying cause of action is based upon tort or tort type rights, and (2) the damages were received on account of personal injuries.  See Commissioner v. Schleier, 515 U.S. 323, 336 (1995).

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable from gross income under section 104(a)(2).  See United States v. Burke, 504 U.S. 229, 237 (1992).  The crucial question is "in lieu of what was the settlement amount paid?"  Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).  Where a settlement agreement lacks express language stating what the settlement amount was paid to settle, the most important factor is the intent of the payor.  See Knuckles v. Commissioner, 349 F.2d 610, 612-613 (10th Cir. 1965), affg. T.C. Memo. 1964-33.  Determining the nature of the claim is a factual inquiry.  See Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995).

Petitioner has failed to establish what part, if any, of the settlement amount here was based upon tort or tort type rights and was received on account of personal injuries.  During his employment with CWU, petitioner filed at least four other

grievances against CWU in addition to the grievance that pertained to his shoulder injury.  Petitioner's own testimony shows that these four grievances were not filed on account of physical injury but instead were filed because petitioner claimed that he was being subjected to unfair labor practices.  We find that he has failed to prove that any of these four grievances were tort type claims for personal injuries.

From this record, we cannot determine the amount, if any, of the settlement payment allocable to tort type claims for personal injuries.  The agreement contains broad language relieving CWU from liability, and the settlement agreement does not specifically allocate any portion of the amount paid to petitioner's shoulder injury.  Under these circumstances, we hold that the payment from CWU is not excludable from petitioner's 1993 gross income.  See Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994).

2.  Schedule C Deductions

After leaving CWU, petitioner engaged in an activity known as "Total Video".  The purpose of this activity was to produce videos.  On the Schedule C attached to his 1993 Federal income tax return, petitioner claimed the following deductions with respect to the video activity:

| | |
|---|---|
| Advertising | $600 |
| Car and truck | 1,210 |
| Depreciation | 3,686 |
| Insurance | 243 |
| Legal | 100 |
| Office | 100 |
| Repairs | 1,500 |
| Supplies | 200 |
| Meals and entertainment | 600 |
| Utilities | 610 |

Petitioner did not report any revenue from the video activity on his 1993 Federal income tax return. Respondent has determined that petitioner failed to substantiate entitlement to deductions for meals, repairs, depreciation, and car expenses.

Taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Moreover, deductions are strictly a matter of legislative grace, and a taxpayer has the burden of establishing that he or she is entitled to any deduction claimed on a return. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Under certain circumstances, where a taxpayer establishes entitlement to a deduction but does not establish the amount of the deduction, the Court is permitted to estimate the amount allowable. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was incurred in at least the amount allowed. See Williams v. United

States, 245 F.2d 559, 560 (5th Cir. 1957).  In estimating the amount allowable, the Court bears heavily against the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, supra at 544.

Section 274(d) overrides the Cohan doctrine in the case of travel expenses, meals and lodging while away from home, entertainment, and "listed property".  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Section 274(d) imposes stringent substantiation requirements.  Under section 274(a), a taxpayer must substantiate the amount, time, place, and business purpose of the expenditures using adequate records or sufficient evidence corroborating his own statement.  See sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Adequate records are defined as an account book, diary, log, statement of expense, trip sheets, or similar records.  See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioner contends that the repair expense claimed on his Federal income tax return relates to repairs he made on a pickup truck that was used exclusively for business.  Passenger automobiles are listed property under section 280F(d)(4)(A)(i).  With certain exceptions, any other property used as a means of

transportation is also listed property under section 280F(d)(4)(A)(ii).

Petitioner also testified that the depreciation deduction claimed on his 1993 Federal income tax return was by mistake misclassified and that the expenditure actually was in the nature of a rental expense.

We are not persuaded by petitioner's testimony or by the evidence he presented regarding his claim for a rental expense deduction. Petitioner asserts that during 1993 he paid $3,500 to rent a raft, with boat gear and oarsmen, for use in his video business. To substantiate his claimed rental expense, petitioner introduced a handwritten receipt. Petitioner failed to provide any further testimony regarding these items. The receipt presented by petitioner is not persuasive. The person who allegedly wrote the receipt was not available at trial. Under these circumstances, and in view of petitioner's failure to provide substantiating detail, we are not convinced that petitioner paid $3,500 to rent a raft, with boat gear and oarsmen. Based upon the foregoing, we hold that petitioner has failed to substantiate his claimed entitlement to a depreciation or rental deduction.

After considering the other receipts petitioner presented, we find that, with one exception, petitioner has failed to demonstrate that he is entitled to the Schedule C deductions claimed on his 1993 Federal income tax return in excess of

amounts allowed by respondent. Most of the expenses claimed by petitioner are subject to the strict substantiation requirements of section 274(d). We do find that petitioner has substantiated, in a manner that satisfies section 274(d), $172.31 of the claimed meal expenses. Accordingly, we hold that petitioner is entitled to a deduction for meals in the amount of $172.31 and is not entitled to a deduction for repairs or car expenses.

3. <u>Casualty Loss</u>

Petitioner contends that on March 15, 1993, he purchased a boat and trailer for $10,000 cash. Petitioner further claims that the boat and trailer were stolen the next day, on March 16, 1993. Petitioner never reported this supposed theft to the police, nor did he file an insurance claim. On his 1993 Federal income tax return, petitioner claimed that his adjusted cost basis in the stolen property was $9,500. Petitioner has not provided any explanation concerning the discrepancy between his claimed adjusted cost basis and the alleged purchase price.

Section 165 provides that individual taxpayers may deduct certain losses, including losses resulting from theft, sustained during the taxable year and not compensated by insurance or otherwise. See sec. 165(a), (c)(3). The amount of a theft loss is equal to the lesser of (1) the fair market value at the time of the theft, or (2) the adjusted cost basis of the property in question. See sec. 1.165-8(c), Income Tax Regs.

Petitioner has failed to substantiate entitlement to a theft loss deduction. In support of his position, petitioner introduced a handwritten receipt from the purported seller of the boat and an affidavit from an alleged friend. Neither of these persons was available at the trial, and petitioner's documentation is not persuasive. Simply put, we find it difficult to believe that petitioner purchased a boat, had it stolen, and then failed to report the theft to the police. Petitioner's account of this supposed theft lacks credibility and in the absence of persuasive and admissible corroborating evidence, we refuse to rely on petitioner's self-serving testimony. See Niedringhaus v. Commissioner, 99 T.C. 202, 219-220 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Based upon the record, we hold that petitioner has not substantiated a theft loss and is not entitled to a theft loss deduction.

4. Charitable Contribution

On his 1993 Federal income tax return, petitioner claimed charitable contributions in cash or check in the amount of $3,767. Respondent has determined that petitioner has not substantiated entitlement to a charitable contribution deduction in an amount greater than $267.

Section 170(a) allows a deduction for charitable contributions subject to certain limitations. Section 170(c) defines the term "charitable contribution" as a contribution or

gift to or for the use of listed types of organizations. A charitable contribution is allowable as a deduction only if verified under regulations prescribed by the Secretary. See sec. 170(a)(1). For charitable contributions of money, taxpayers must maintain for each contribution one of the following: (1) A canceled check; (2) a receipt from the donee organization; or (3) other reliable written records. See sec. 1.170A-13(a)(1), Income Tax Regs. For charitable contributions of property other than money, taxpayers generally must maintain for each contribution a receipt from the donee showing the following information: (1) The name of the donee; (2) the date and location of the contribution; and (3) a description of the property in detail reasonably sufficient under the circumstances. See sec. 1.170A-13(b)(1), Income Tax Regs.

During the trial, petitioner presented an unsigned document entitled, "Quarterly Report of Giving", and a letter from his church. Both documents are unpersuasive. The document entitled "Quarterly Report of Giving" was not signed by a church official, even though it provided space for a signature. The church letter does not even state a definite contribution amount.

Petitioner also claims that he contributed electrical equipment to Perry Technical Institute and an organization known as "N.P.O.".[1] Petitioner has failed to introduce any evidence

---

[1] We note that petitioner did not claim a contribution of

(continued...)

that demonstrates that these alleged donees were qualified charitable organizations. Moreover, these donees are not listed in IRS Publication 78, "Cumulative List of Organizations Described in Section 170(c) of the Internal Revenue Code".

For the foregoing reasons, we hold that petitioner is not entitled to a deduction for charitable contributions in an amount greater than the amount determined by respondent.

5. <u>Unreimbursed Employee Expenses and IRA Contribution Deductions</u>

On his 1993 Federal income tax return, petitioner claimed a deduction for unreimbursed employee expenses in the amount of $5,700, and an IRA contribution deduction in the amount of $2,000. Respondent has determined that petitioner failed to substantiate the claimed IRA deduction and was entitled only to a deduction for unreimbursed employee expenses in the amount of $224. Petitioner has failed to present any documentation or testimony to support his claimed deductions. Accordingly, petitioner is not entitled to a deduction for unreimbursed employee expenses in an amount greater than the amount determined by respondent and is not entitled to a deduction for IRA contributions.

6. <u>Accuracy-Related Penalty</u>

Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to negligence

---

[1](...continued)
property other than money on his 1993 Federal income tax return.

or disregard of rules or regulations.  See sec. 6662(b)(1).

Negligence is the lack of due care or failure to do what a

reasonable and ordinarily prudent person would do under the

circumstances.  See Neely v. Commissioner, 85 T.C. 934, 947

(1985).  The term "disregard" includes any careless, reckless, or

intentional disregard.  Sec. 6662(c).  The record in this case

shows that petitioner was negligent and disregarded rules and

regulations.  Petitioner has failed to furnish records or

documentation adequate to substantiate his claimed deductions.

Accordingly, we hold that petitioner is liable for the accuracy-

related penalty under section 6662(a).

    To reflect the foregoing,

                                    Decision will be

                            entered under Rule 155.